521 So.2d 1100 (1988)
STATE of Florida, Petitioner,
v.
Carlos Franco SUCO, Respondent.
No. 70313.
Supreme Court of Florida.
March 10, 1988.
Robert A. Butterworth, Atty. Gen. and Richard L. Kaplan, Asst. Atty. Gen., Miami, for petitioner.
Edward R. Shohat and Ira N. Loewy of Bierman, Shohat & Loewy, P.A., Miami, for respondent.
*1101 EHRLICH, Justice.
We have for review State v. Suco, 502 So.2d 446 (Fla. 3d DCA 1986), because of conflict with decisions of other district courts of appeal. We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and approve the result reached below.
This case involves the suppression of evidence seized during the warrantless search of a single family dwelling owned by the respondent, Carlos Franco Suco. Suco orally leased the house on a six-month basis to his codefendants, Jorge and Isabel Betancur, who lived in the house with their three children. Although Suco did not reside at the house, he retained a key for the purpose of entering the premises to collect rent, to maintain the premises and to make repairs when necessary. There were no stated restrictions to his right of entry.
The chain of events leading up to the seizure of the suppressed evidence began when Suco and codefendant Jorge Navarrette approached the house and knocked on the front door. Mrs. Betancur was in the laundry room and was unable to hear the knock. When no one answered the door, Suco used his key to unlock the door and he and Navarrette entered the house. Two Metro-Dade police officers who were patrolling the area for possible home invasion robberies became suspicious when they saw the two men standing at the front door and looking in the window. When they circled back by the house and the two men were no longer outside, the officers decided to call a backup unit and investigate. After the backup unit arrived, two of the officers knocked on the front door. Mrs. Betancur answered the door. While the officers were talking to Mrs. Betancur at the front door, a third officer, who was in the back of the house, observed Suco and Navarrette walk from the kitchen to the family room where the Betancur children were watching cartoons on television. Navarette returned to the kitchen. Suco sat down on the couch and began watching the television with the children. During the conversation with Mrs. Betancur, it became apparent that she was totally unaware that the two men were in the house. The trial court determined that at this point, Mrs. Betancur voluntarily consented for the police to enter the house for the purpose of checking for home invaders. After entering the house, it became apparent to the officers that Mrs. Betancur knew Suco and that no home invasion had taken place. Two distinct searches followed, only the second of which is at issue here.
First, while checking for home invaders, one of the officers found a large amount of money in a box in the northeast bedroom. Suco, Betancur and Navarrette were ordered outside the house onto the front porch, where identification was obtained from each of them. While the three remained on the porch, two of the officers returned to the northeast bedroom where they found a plastic garbage bag containing more money, a ledger book and suitcases which had coffee grounds on the inside lining. These items were seized by the police. The trial court ruled that the evidence seized during the first search was a proper plain view seizure. The respondent does not challenge this ruling, as it is not ripe for appellate review. See State v. Ferguson, 405 So.2d 294 (Fla. 4th DCA 1981); Fla.R.App.P. 9.130(a)(2) and Fla.R. App.P. 9.140.
The second search occurred after the police escorted the three back into the house. After learning that Suco was the owner of the house, the police attempted to obtain his consent to a general search of the house. When Suco refused, one of the officers took Mrs. Betancur aside and attempted to get her consent to search. Mrs. Betancur eventually signed a written form consenting to a second search. A general search of the house followed, during which 208 kilos of cocaine, cash and three semiautomatic weapons were found in the attic and in the northwest bedroom. The trial court found that Mrs. Betancur did not freely consent to the second search. The State does not challenge this finding.
Suco, Navarrette, and the Betancurs were charged with 1) trafficking in cocaine, and 2) conspiracy to traffic in cocaine. After entering pleas of not guilty, Suco and the Betancurs filed motions to suppress the *1102 evidence seized from the house. After an evidentiary hearing, the trial court denied the motions to suppress as to the search of the northeast bedroom and granted the motions as to the search of the rest of the house. On appeal, the State conceded that the general search of the house was unreasonable under the fourth amendment, but challenged the suppression of evidence seized during that search in connection with respondent Suco. The State took the position that Suco failed to establish that he had a reasonable expectation of privacy in the premises searched and thus, lacked standing to seek to have the evidence suppressed.
On appeal, the district court affirmed the trial court's order, concluding that Suco had a reasonable expectation of privacy in the premises searched either as 1) a lessor who had retained and exercised a possessory interest in the premises; or as 2) an invited guest who was present on the premises at the time of the search. The State contends that as a lessor Suco did not retain sufficient rights in the premises to give him an expectation of privacy therein. The State further contends that as a mere guest Suco did not have a reasonable expectation of privacy in those areas of the house he had not accessed. Suco, on the other hand, does not rely on the district court's lessor or invitee analyses, as such, but urges that his status as lessor and his presence at the time of the search are merely factors which when considered together with others support the trial court's finding that he had a reasonable expectation of privacy in the house searched. We agree with the respondent that the trial court's determination that he had standing to challenge the search was proper under the totality of the circumstances. Therefore, although we disapprove the district court's dual analyses which appear to make either the respondent's status as lessor or his status as an invitee determinative, we approve the result reached below.
In Dean v. State, 478 So.2d 38 (Fla. 1985), this Court expressly adopted the "single-treatment analysis" for determining whether a defendant is entitled to challenge a search or seizure as violative of the fourth amendment to the United States Constitution, as espoused by the United States Supreme Court in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Under the Rakas analysis, the inquiry is whether the defendant's rights were violated by the allegedly illegal search or seizure. United States v. Salvucci, 448 U.S. 83, 87 n. 4, 100 S.Ct. 2547, 2551 n. 4, 65 L.Ed.2d 619 (1980); Dean, 478 So.2d at 40-41. In other words, did he have a reasonable expectation of privacy in the premises searched? Rawlings v. Kentucky, 448 U.S. 98, 104-05, 100 S.Ct. 2556, 2561-62, 65 L.Ed.2d 633 (1980). As noted in Rakas, although the use of property concepts in determining the presence or absence of a reasonable expectation of privacy has not been altogether abandoned, 439 U.S. at 143 n. 12, 99 S.Ct. at 430 n. 12, "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control." 439 U.S. at 143, 99 S.Ct. at 430. It is, rather, the totality of the circumstances in any given case which must be looked to in determining whether a defendant had a reasonable expectation of privacy in the premises searched. Rawlings, 448 U.S. at 104, 100 S.Ct. at 2561; Rakas, 439 U.S. at 152, 99 S.Ct. at 435 (Powell, J., Concurring); Mancusi v. Deforte, 392 U.S. 364, 368, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154 (1968); Daniels v. State, 411 So.2d 1034, 1036 (Fla. 1st DCA 1982). We agree with the respondent that his status as lessor and his status as invitee are merely factors to be considered in conjunction with all the surrounding circumstances.
We also agree that the totality of the circumstances support the trial court's finding that Suco had a reasonable expectation of privacy in the house searched. Suco was not a casual visitor who happened to be present at the time of the search. See Rakas, 439 U.S. at 142, 148, 99 S.Ct. at 429, 432; United States v. Rackley, 742 F.2d 1266 (11th Cir.1984). He was the owner of the premises who had let himself in and, without announcing his presence, made himself at home by sitting in the family room and watching cartoons *1103 with the Betancur children. Mrs. Betancur testified that Suco had been in the "back part of the house" prior to being found on the couch, and "every time [Suco] would come over, he would do that." Under these circumstances, the affirmance of the trial court's finding that Suco had standing to challenge the search as violative of his fourth amendment rights was proper.
Accordingly, the affirmance of the suppression order at issue is approved.
It is so ordered.
McDONALD, C.J., and OVERTON, BARKETT, GRIMES and KOGAN, JJ., concur.
SHAW, J., dissents.