PADOVANO, J.,
dissenting.
It is true that a person does not have the same expectation of privacy in a hospital room as he or she would have at home, but if the right of privacy exists to any degree in a hospital room, I think that it was violated in the circumstances presented here. For this reason, I dissent.
The state acknowledges that the order obtained by the hospital does not qualify as a search warrant. The Fourth Amendment states in pertinent part “no warrant shall issue, but upon probable cause, supported by oath or affirmation.” The facts presented to the judge in West Virginia were not submitted under oath, and they do not rise to the level of probable cause.
Nor is there a dispute that the Fourth Amendment applies to the warrantless search of a hospital room. The Florida Supreme Court categorically stated in Jones v. State, 648 So.2d 669 (Fla.1994) that a hospital room is not a public place for Fourth Amendment purposes. The court acknowledged that a hospital patient would not have the “heightened expectation of privacy” that exists at home, but concluded that the patient still has a constitutionally protected right of privacy. See Id. at 677. Whether the right has been violated depends on the nature of the intrusion. As the court explained, a patient “could expect that hospital personnel would enter his room to perform routine hospital procedures, and that members of the public would be allowed to visit him in his room if he did not object,” but that the patient has “no reason to believe that third parties would enter his room to look for and seize his personal property.” Id. at 677.
This principle has been applied in other states, as well. Several courts have concluded that the expectation of privacy that exists in a hospital room is only slightly lower than the protections the Fourth Amendment provides at home. See State v. Stott, 171 N.J. 343, 794 A.2d 120, 127 (2002) (“[A] hospital room is more akin to one’s home than to one’s car or office. It is a place to shower, dress, rest, and sleep.”); People v. Brown, 88 Cal.App.3d *250 283, 151 Cal.Rptr. 749, 754 (1979) (“[B]y checking himself into a hospital, a patient may well waive his right of privacy as to hospital personnel, [but] it is obvious that he has not turned ‘his’ room into a public thoroughfare.”); Morris v. Commonwealth, 208 Va. 331, 157 S.E.2d 191, 194 (1967) (holding that, just as a search of a hotel room will be unlawful without a warrant, “the same is true of the room in [a] hospital which had been assigned to and paid for by the defendant”).
We know from these precedents that there are at least some situations in which a patient’s privacy rights are constitutionally protected. The question then is whether this case presents one of those situations. In my view, it does. We need only ask whether it would be reasonable for a person in the defendant’s position to expect that she would be covertly videotaped by hospital personnel acting on behalf of state law enforcement authorities. The answer is plainly no. While it may be reasonable to assume that a nurse who is in the room for a medical examination might discover something that would otherwise remain private, or that a visitor might inadvertently discover a crime that would otherwise remain undetected, I don’t think that any hospital patient reasonably expects that he or she will be surreptitiously videotaped in the middle of the night.
Video surveillance is one of the most intrusive methods of detecting crime. As Judge Posner noted in United States v. Torres, 751 F.2d 875, 885 (7th Cir.1984), it is “identical in its indiscriminate character to wiretapping and bugging,” but it “is even more invasive of privacy, just as a strip search is more invasive than a pat down search.” Video surveillance is a constant form of search that takes place over an extended period of time, and for that reason, it often captures innocent behavior that is intended to be private. Given its potential for abuse, video surveillance may violate the Fourth Amendment even in situations in which the suspect has a diminished expectation of privacy.
For example, a person has a reduced expectation of privacy in a locker room or an employee break room, see Trujillo v. City of Ontario, 428 F.Supp.2d 1094 (C.D.Cal.2006); Rosario v. United States, 538 F.Supp.2d 480 (D.P.R.2008), but that does not authorize government officials to videotape activities in those locations. In both Trujillo and Rosario, the courts held that, although the individuals could expect others to be present in the room, that did not amount to an expectation that they would be viewed by third parties using a hidden camera. The court in Trujillo noted that “[pjrivacy does not require solitude .... [A] diminished privacy interest does not eliminate society’s expectation to be protected from the severe intrusion of having the government monitor private activities through hidden video cameras.” 428 F.Supp.2d at 1104-05 (quoting United States v. Nerber, 222 F.3d 597, 604 (9th Cir.2000); United States v. Taketa, 923 F.2d 665, 677 (9th Cir.1991)).
The majority points out that the nurses were free to come in and out of the room without notice and that they were monitoring the child’s breathing with an apnea monitor. But the issue here is not whether it would violate the defendant’s right of privacy if a nurse walked into the room and discovered illegal activity. Nor is it necessary for us to ask whether it would be reasonable for the defendant to assume that a nurse would have gone to the room to investigate had there been an abnormal reading on the apnea monitor. The occasional presence of nurses and the existence of the apnea monitor do not support a conclusion that the defendant reasonably expected the hospital staff to videotape her *251 every move while she was staying in the hospital with her son.
Some activities in a hospital room are open to view by others but many others are intended to be private. A hospital room is typically frequented only by family, friends and medical professionals, where one not only undergoes medical examinations, but also eats, sleeps, bathes and changes clothes. The patient and family members should enjoy at least as much of an expectation of privacy as they would in a locker room or break room, where one fully expects to encounter perfect strangers. Here, as in Trujillo and Rosario, the semi-public nature of the room is not enough to create an expectation that activities in the room will be videotaped.
The majority also suggests that the rule in Jones v. State may not apply with the same force here because the defendant was not a patient. She is described in the majority opinion as a “visitor.” I think this argument is without merit for several reasons. First, the patient was an infant. The majority treats him as if he were an adult who had made his own arrangements for the room and it then minimizes his mother’s expectation of privacy by treating her as if she were merely a visitor. Second, the right of privacy that applies to a hospital patient very often extends to members of the immediate family. It would not be unusual for a person to spend the night in a hospital room with a spouse or a child. There is no reason to conclude that the patient has a right of privacy but the family member who is staying with the patient does not. Third, the hospital staff asked the defendant to spend the night ■with the child in the room for the ostensible purpose of watching over the child. The state is therefore not in a position to contend that she was merely visiting.
I understand the gravity of this case and I am certainly sympathetic to the challenges doctors face in dealing with Mun-chausen syndrome by proxy. These are not reasons, however, to diminish the protections afforded by the Fourth Amendment. A person who is staying in the hospital, even a person who is suspected of having Munchausen syndrome by proxy, has a reasonable expectation of privacy. For an annotation of the many pertinent cases addressing this right, see Michael T. Flannery, First, Do No Harm: The Use of Covert Video Surveillance to Detect Mun-chausen Syndrome by Proxy — An Unethical Means of “Preventing” Child Abuse, 82 U. Mich. J.L. Ref. 105 (1998).
For these reasons, I respectfully dissent. I think the trial judge had it right when he concluded that the hospital, acting under authority granted by the State of West Virginia, violated the defendant’s constitutionally protected right of privacy by covertly videotaping her in her child’s hospital room.