IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

ROBERT DALE PURIFOY,

      Appellant,

v.

STATE OF FLORIDA,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-4007

Opinion filed May 25, 2017.

An appeal from the Circuit Court for Escambia County.
Paul A. Rasmussen, Judge.

Michael Ufferman of Michael Ufferman Law firm, P.A., Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Michael L. Schaub, Assistant Attorney General, Tallahassee, for Appellee.

PER CURIAM.

Robert D. Purifoy appeals his judgment and sentence for first-degree murder, attempted first-degree murder, and tampering with evidence, stemming from a shooting incident. Purifoy raises three claims on appeal: (1) the trial court erred by allowing the State to introduce into evidence Purifoy's clothes because the warrantless taking of Purifoy's clothes from the hospital by law enforcement

officers amounted to "a meaningful interference with his constitutionally protected possessory rights" pursuant to <u>Jones v. State</u>, 648 So. 2d 669, 675 (Fla. 1994); (2) the trial court erred by preventing the defense from having access to the video surveillance equipment that was relied upon by the State; and (3) the trial court erred by denying Purifoy's motion for judgment of acquittal because the State did not present facts inconsistent with Purifoy's reasonable hypothesis of innocence. We affirm the second and third issues without comment, but the first issue warrants discussion.

## I.

On a June evening in 2012, Justin Stanley and Purifoy got into a fight at a nightclub, during which Purifoy threatened to kill Stanley. About five months later in the early morning hours of November 6, 2012, Stanley was in bed asleep with Amber Johnson when his security alarm went off. He woke up, grabbed his firearm from his night stand, and saw someone in the house about six feet tall wearing a Halloween mask of some type, sweatshirt, long pants, gloves, and boots. The intruder shot at Stanley in the bed, so Stanley returned fire, claiming that one of his shots hit the intruder because the intruder stumbled as he took off running. Ms. Johnson died from one of the intruder's shots. Stanley called 9-1-1 and was taken to Sacred Heart Hospital to treat a gunshot wound to his chest and arm.

2

An officer responded to Sacred Heart Hospital that same morning in reference to a walk-in patient, Purifoy, who had a gunshot wound to his upper abdomen and a "graze" to his thigh. The officer observed doctors and nurses removing Purifoy's clothes in an emergency room bay. A nurse collected the clothing and put it in a bag at the foot of the stretcher, which was typical procedure. The officer stayed with the bag of clothing until the crime scene technician arrived. Once the technician arrived, he pointed to the clothing for the technician to take, which she did. At some point, Purifoy told the nurse that he was running away from a robbery when he was shot, and also told another law enforcement officer who questioned him at the hospital that he had been robbed.

The jury found Purifoy guilty on all three counts, and he was sentenced to life on the murder and attempted murder counts, and five years' imprisonment on the tampering count. This appeal ensued.

## II.

We review the trial court's ruling on Purifoy's motion to suppress as a mixed question of law and fact. Connor v. State, 803 So. 2d 598, 605-08 (Fla. 2001). The standard for reviewing facts is whether competent, substantial evidence supports the trial court's factual findings; the trial court's application of law is reviewed *de novo*. Id. Both the Fourth Amendment to the United States Constitution and article I, section 12 of the Florida Constitution, protect the people

3

of this state from "unreasonable searches and seizures" of "their persons, houses, papers and effects." The protection afforded by our state constitution is expressly limited to that afforded under the Fourth Amendment as interpreted by the United States Supreme Court. See Bernie v. State, 524 So. 2d 988 (Fla. 1988); art. I, § 12, Fla. Const. (Article I, section 12 "right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court."). "As a general rule, a warrantless search or seizure is per se unreasonable, unless the search or seizure falls within one of the well established exceptions to the warrant requirement." Jones v. State, 648 So. 2d 669, 674 (Fla. 1994).

Under the open view doctrine, "objects such as weapons or contraband found in a 'public place' can be seized without a warrant." Id. at 676. Our supreme court explained that:

> this situation occurs when both the officer and the contraband are in an area where the defendant has no reasonable expectation of privacy. Because privacy rights are not implicated, the seizure of property in open view is presumptively reasonable, assuming there is 'probable cause to associate the property with criminal activity.'"

Id. (internal citation omitted). Under the plain view doctrine, which differs from the open view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object [itself], they may seize it, without a

4

warrant." Id. at 677.

In Jones, the Florida Supreme Court dealt with a situation similar to the instant case. Jones was involved in a truck accident and taken to the emergency room and admitted to the hospital. Id. at 672. A detective and a lieutenant were sent to the hospital to question Jones when they realized that the owner of the truck (who was not Jones) was missing. Id. While in Jones' private hospital room, the officers seized a bag of clothing placed in a corner; the clothing had been removed from Jones by hospital staff after the accident and put in the bag. Id. One officer testified that he decided the clothing should be seized "because, from his experience, he believed that the evidence taken from Jones' clothing might assist in the search for the missing man," and he was concerned it would disappear based on a deliberate or inadvertent act. Id. at 674. Jones was convicted of first-degree murder, robbery, and grand theft of a motor vehicle. Id. at 671.

On appeal, Jones argued that the trial court erred by denying his motion to suppress evidence that was seized from the hospital. Id. at 674-75. The State argued that the open view and plain view doctrines, among other exceptions, justified the seizure. But our supreme court rejected application of the open view doctrine because Jones' hospital room was not a public place. Id. at 677 (Jones "had no reason to believe that third parties would enter his room to look for and seize his personal property."). And even if the room was a public place, the court

5

was not convinced that "at the time of the seizure the officers had probable cause to associate the bag of clothing with criminal activity." Id. The supreme court also rejected the plain view doctrine because "the officers had no lawful right of access to the bag of clothing . . . although the bag containing Jones' clothing was unsealed, its contents were not apparent until [the officer] actually walked over to the bag, which was in the corner of the room, and looked into it." Id. at 678. The court also rejected the doctrine because "the incriminating character of the clothing was not 'immediately apparent.' Even after [the officer] determined that the bag contained clothing, the probative value of the clothing did not become apparent until it was examined by an expert and the 'mud' was detected on Jones' shoes and pants." Id. at 677-78. Though the supreme court rejected the State's arguments and found that the evidence was illegally seized and the testimony relating to it should have been suppressed, it found the admission of the evidence harmless beyond a reasonable doubt based on several admissions by Jones to various culpable actions. Id. at 679.

Purifoy argues that the warrantless taking of his clothing from the hospital amounted to "a meaningful interference with his constitutionally protected possessory rights" in violation of the state and federal constitution, and that the State improperly relied on that evidence to obtain his convictions. The State argues that the officer had the right to seize the bag of clothing under the open view

doctrine (public place + probable cause) because, under <u>Buchanan v. State</u>, 432 So. 2d 147, 148 (Fla. 1st DCA 1983) (a pre-<u>Jones</u> case), before a defendant can challenge the legality of a search, he must have a reasonable expectation of privacy in that area, and there is no reasonable expectation of privacy in a curtained-off area in a busy hospital emergency room "where medical personnel [are] constantly walking in and out and where [a person can] expect to remain only a few hours at most." As such, the officer could seize Purifoy's bloody clothing—the State claims—because the emergency room bay was a public place where Purifoy had no reasonable expectation of privacy.

"A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." <u>Jones</u>, 648, So. 2d at 675 (quoting <u>United States v. Jacobsen</u>, 466 U.S. 109, 112 (1984)). Although <u>Jones</u> involved a private hospital room, which is different than the hospital space implicated in this case, the guiding principle for seizures still stands that "to challenge a seizure, the defendant only need to establish that the seizure interfered with his or her constitutionally protected possessory interest. The infringement of *privacy rights*, while often a precursor to a seizure of property, is not necessary to such a challenge." <u>Id.</u> (emphasis added). The supreme court explained that "there clearly was a meaningful interference with his

7

constitutionally protected possessory rights when [Jones'] effects were seized without a warrant." Id. "Jones never gave up his possessory rights in his belongings prior to their seizure. Moreover, Jones' clothing was returned to his immediate possession and control when it was placed in his room." Id. The court further explained that "[b]ecause Jones never voluntarily abandoned either his clothing or other effects, he had no reason to believe that his belongings would be turned over to police without his authorization. Even though hospital staff generally has joint access to and control of personal effects kept in a patient's room, the staff cannot consent to the search or seizure of the effects because it has no right to mutual use of a patient's belongings, as required." Id. (citations omitted).

Here, even assuming that Purifoy did not have a reasonable expectation of privacy in the emergency room bay generally, which Jones explains is not necessary to such a challenge, he never gave up his possessory rights to his clothing prior to their seizure. The bag of clothing stayed at the foot of his stretcher, and he did not abandon it or otherwise give permission for it to be taken; he did not lose his possessory interest in his clothing simply because the clothing was in a public place. For example, when a person is in an airport, she does not lose possessory interest in luggage or a purse just because she is in a public place. This situation is different from that in Buchanan because Purifoy wasn't hiding his

8

clothing in the bag, like Buchanan was hiding drugs under the hospital mattress. And clothing, by its very nature, is not contraband like drugs in which there is never a right to privacy. Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 311 (1967) ("The seizure of contraband has been justified on the ground that the suspect has not even a bare possessory right to contraband."). Accordingly, Purifoy correctly argues that law enforcement meaningfully interfered with his constitutionally protected possessory rights of his clothing without a warrant.

But the State argues that the seizure of property in open view is presumptively reasonable if there is "probable cause to associate the property with criminal activity." Jones, 648 So. 2d at 676. (citing Payton v. New York, 445 U.S 573, 587 (1980)). The State claims that probable cause existed to associate the clothing with criminal activity because Purifoy arrived at the hospital with gunshot wounds shortly after the victim indicated in his 9-1-1 call that he may have shot the intruder, was wearing clothing with "blood on it and bullet holes," and alleged "he was involved in a crime, albeit as a victim."

This is sufficient. Purifoy was a self-described victim of a crime, evidence of which officers observed as hospital staff removed Purifoy's bloody clothes prior to surgery. When the totality of the circumstances are considered, the bloody clothes are easily seen as direct evidence of a crime. That is so even if we put aside the inconsistencies about whether the clothing had bullet holes and whether the officer

9

knew about the correlated timing of the victim's 9-1-1 call and Purifoy's arrival to the emergency room. Under the open view doctrine, the seizure of the bag of clothing was justified because, even though there was a meaningful interference with Purifoy's possessory right, there was probable cause to associate the bloody clothes with criminal activity. See Illinois v. Gates, 462 U.S. 213, 235 (1983) ("[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause."). Law enforcement officers may not simply seize property from a person in a public place absent a showing—of the type made here—that probable cause exists that associates the property with a crime. Having determined that the open view doctrine applies, we need not address the plain view doctrine. Even if the seizure of his clothing from the hospital violated his Fourth Amendment rights, we view the error as harmless beyond a reasonable doubt given the other testimony and evidence adduced at trial. See, e.g., Bravo v. State, 65 So. 3d 621 (Fla. 1st DCA 2011) (applying harmless error analysis in Fourth Amendment context).

### III.

In conclusion, we find that the trial court did not err in admitting into evidence the bloody clothing in the bag taken from the stretcher in the emergency hospital bay. The judgment and sentence are affirmed.

AFFIRMED.

WOLF, MAKAR, and M.K. THOMAS, JJ., CONCUR.