998 So.2d 573 (2008)
Harry JONES, Appellant,
v.
STATE of Florida, Appellee.
Harry Jones, Petitioner,
v.
Walter A. McNeil, etc., Respondent.
Nos. SC06-474, SC07-729.
Supreme Court of Florida.
December 23, 2008.
As Revised on Denial of Rehearing December 23, 2008.
*577 Jeffrey M. Hazen and Harry Brody of Brody and Hazen, P.A., Tallahassee, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, and Stephen R. White, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.

REVISED OPINION
PER CURIAM.
Harry Jones was convicted of first-degree murder and sentenced to death for the 1991 killing of George Wilson Young, Jr. He now appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the trial court's order and deny Jones's petition.

I. FACTS AND PROCEDURAL HISTORY
The facts are taken from Jones's direct appeal. See Jones v. State, 648 So.2d 669 (Fla. 1994). Young's body was found in Boat Pond on Horseshoe Plantation in north Leon County. Although Young suffered several injuries, the cause of death was freshwater drowning.
On the day of the murder, Young had gone to a liquor store on the west side of Tallahassee. While he was talking with his friend Archie Hamilton, who worked there, Harry Jones and Timothy Hollis came in. When Hollis, who was intoxicated, appeared to get sick, Jones took him to the restroom. He returned in time to see Young pull money from his pocket to pay for a half pint of gin. Young helped Jones take Hollis outside, and agreed to give the two men a ride home. Several witnesses saw the three men leave the liquor store in Young's red Ford Bronco II a little before 7 p.m. Hollis's mother testified that Jones and a white-haired man brought her son home in a red truck and then left the house together. Young and Jones were next seen together between 7:30 and 8 p.m. purchasing a six-pack of beer at a local convenience store.
At about 8:05 p.m., Young's truck was involved in an accident on the north side of town, west of Boat Pond. Jones, the only occupant, was taken to the emergency room and admitted to the hospital. When authorities realized that the owner of the truck Jones was driving was missing, a detective was sent to question Jones. He told the detective that he borrowed the car from a man in "Frenchtown" for twenty dollars. The next day, when authorities learned that Jones had been seen with *578 Young before the accident, officers questioned him again.
While in Jones's hospital room, officers seized a bag of his clothing, which hospital personnel had removed. The clothing was tested. Soil and pollen samples taken from Jones's shoes and pants were similar to samples taken from Boat Pond. Law enforcement also seized lottery tickets and cash that had been removed from Jones's pockets. The lottery tickets had been purchased at the same time and place as tickets found in Young's truck.
Jones was charged with first-degree murder, robbery, and grand theft of a motor vehicle and incarcerated in a medical cell with Kevin Prim and Jay Watson. Prim testified that Jones told him that he met a "guy" at a liquor store. After observing the guy pull money from his pocket to pay for his purchase, Jones talked the guy into giving him and his intoxicated "cousin" a ride home. After dropping the cousin off, Jones and the guy went to a pond. Jones attempted to take the man's money and a struggle ensued. Jones admitted breaking the man's arm during the struggle and then holding him down in water until he stopped "popping up." Watson, the other cellmate, testified that he overheard Jones tell Prim that he killed a man. Jones was found guilty as charged.
During the penalty phase, Jones testified that on May 31 he and Hollis drank most of the night and began drinking again the next morning and throughout that day. When he was taken to the hospital after the accident, his blood alcohol level was .269.
By a vote of ten to two, the jury recommended that Jones be sentenced to death. The trial court followed the recommendation, finding three aggravating circumstances and three mitigating circumstances. In aggravation, the court found: (1) Jones previously had been convicted of another violent felony (including attempted robbery, robbery, two counts of robbery with a firearm, and robbery with a firearm and kidnapping); (2) the murder was committed while Jones was engaged in the commission of a robbery; and (3) the murder was especially heinous, atrocious, or cruel (HAC). In mitigation, the court found: (1) Jones's capacity to appreciate the criminality of his conduct or to conform this conduct to the requirements of law was substantially impaired; (2) he had suffered from a traumatic and difficult childhood; and (3) he had the love and support of his family.
On appeal, Jones raised several claims.[1] We affirmed his convictions and sentences. Jones, 648 So.2d at 669. The United States Supreme Court denied certiorari. See Jones v. Florida, 515 U.S. 1147, 115 S.Ct. 2588, 132 L.Ed.2d 836 (1995). Jones then filed a motion for postconviction relief, raising thirteen claims.[2] After a Huff[3] *579 hearing, the trial court held an evidentiary hearing on claims one through three (in part) and claim four. After the hearing, the trial court denied all claims. Jones now appeals. He also petitions for a writ of habeas corpus.

II. ANALYSIS
Jones raises three issues on appeal and three issues in his petition for writ of habeas corpus. We address each of these in turn.

A. Postconviction Claims
In his appeal from the trial court's denial of postconviction relief, Jones raises three issues. For the reasons explained below, we affirm the trial court's denial of these claims.

1. Brady and Giglio Claims
Jones first argues that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by (1) failing to disclose evidence of an alleged agreement with Kevin Prim, a witness testifying for the State at Jones's trial; (2) failing to disclose information about Prim's "on-going criminal activity;" and (3) failing to disclose that Trooper Don Ross "observed the victim [driving under the influence] in the northern part of Leon County prior to his meeting Mr. Jones." Jones also claims that the State violated Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), by presenting or failing to correct false testimony about Prim's release from jail. We first explain the standards for analyzing claims under Brady and Giglio and then address each of Jones's arguments.
Under Brady, the State must disclose to the defense knowledge of material exculpatory or impeachment evidence. Brady, 373 U.S. at 87, 83 S.Ct. 1194; see also Kyles v. Whitley, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). To demonstrate a Brady violation the defendant must prove that (1) the evidence is favorable to him, either because it is exculpatory or because it is impeaching; (2) the State willfully or inadvertently suppressed it; and (3) that the suppression resulted in prejudice. Evidence is prejudicial or material under Brady if there is a reasonable probability that had the evidence been disclosed, the result of the trial would have been different. United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Thus, the critical question is whether the favorable evidence *580 could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Strickler v. Greene, 527 U.S. 263, 290, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting Kyles, 514 U.S. at 435, 115 S.Ct. 1555).
To establish a claim under Giglio, the defendant must demonstrate that (1) the prosecutor presented or failed to correct false testimony; (2) the prosecutor knew the testimony was false; and (3) the evidence was material. Guzman v. State, 941 So.2d 1045, 1050 (Fla.2006). Once the first two prongs are established, the false evidence is deemed material if there is any reasonable possibility that it could have affected the jury's verdict. Id. Under this standard, the State has the burden to prove that the false testimony was not material by demonstrating it was harmless beyond a reasonable doubt. Id.; see also Mordenti v. State, 894 So.2d 161, 175 (Fla. 2004).
In reviewing Joness Brady and Giglio claims, we are bound by the trial court's credibility determinations and factual findings to the extent they are supported by competent, substantial evidence. See Johnson v. State, 921 So.2d 490, 507 (Fla.2005); Guzman, 941 So.2d at 1049-50. However, we decide de novo whether the facts are sufficient to establish each element. Id. Giving deference to the trial courts rulings on questions of fact, especially when such factual findings are based on an evaluation of credibility and demeanor, we deny each of Joness Brady and Giglio claims. See Jones v. State, 709 So.2d 512, 514-15 (Fla.1998) ([W]e are mindful that this Court, as an appellate body, has no authority to substitute its view of the facts for that of the trial judge when competent evidence exists to support the trial judges conclusion.) (quoting State v. Spaziano, 692 So.2d 174, 175 (Fla.1997)).

a. Agreement
Jones claims that the State failed to disclose evidence of a promise it made to Kevin Prim, a key trial witness. While evidence of a promise of leniency in exchange for favorable testimony would fall within Brady, the trial court found, based on evidence presented, that there were no promises made to Kevin Prim.
At trial, Prim denied that he had been promised any benefits for informing the police about Jones's case. At the evidentiary hearing below, both Detective Mike Wood and prosecutor Neil Wade confirmed that they had made no such promises. Although Jones presented contradictory evidence, the court found there were no promises made and denied Joness Brady challenge. Ample record evidence supports that conclusion. We therefore affirm on this ground.
The court also properly denied Joness Giglio claim. He contends that the State presented or failed to correct false testimony about Prim's release from jail. Again, because the trial court found that no promise, explicit or implicit, had been made, the testimony concerning Prim's release was not false. We deny this claim as well.

b. Ongoing Criminal Activity
Next, Jones contends that the State violated his due process rights by failing to disclose Prim's ongoing criminal activity and drug use. We reject this claim. We find, as did the trial court, that Jones has failed to demonstrate that Prim was or is addicted to drugs or that he was under the influence of drugs at the time of his testimony at either trial, or during the period of time he shared a cell with Defendant.
Additionally, the record demonstrates that the State was equally unaware of Prim's criminal activity directly before, *581 during, or after Jones's trial. Prim was involved in various robberies on several dates in 1992: October 24, November 11, and November 19. However, he was connected to and arrested for these crimes less than 24 hours before Jones was sentenced. Prosecutor Wade testified that he did not receive any evidence of Prim's criminal activity in or around the trial; in fact, he was not informed of Prim's crimes until well after Jones was convicted and sentenced. While we recognize that Brady requires prosecutors to disclose evidence "known only to police investigators and not to the prosecutor," Kyles v. Whitley, 514 U.S. 419, 433-34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), we find it unreasonable to expect the prosecutor in this case, having no knowledge of Prim's illegal activity, to become informed of and disclose such information in the less than twenty-four-hour period between Prim's arrest and Jones's sentencing hearing. See Breedlove v. State, 580 So.2d 605, 607 (Fla.1991) (rejecting the defendant's Brady claim because the detectives' knowledge of the witnesses' criminal activities was not readily available to the prosecution). Therefore, Jones has failed to establish that the State withheld favorable evidence in violation of Brady.
Moreover, even if the State inadvertently withheld such evidence, Jones cannot demonstrate that he was prejudiced by the nondisclosure. A defendant must demonstrate "a reasonable probability that the jury verdict would have been different had the suppressed information been used at trial." Smith v. State, 931 So.2d 790, 796 (Fla.2006) (citing Strickler v. Greene, 527 U.S. at 289, 119 S.Ct. 1936). In other words, the favorable evidence must place "the whole case in such a different light as to undermine confidence in the verdict." Id. (quoting Strickler, 527 U.S. at 290, 119 S.Ct. 1936). Jones argues that the evidence provided a basis for impeaching Prim, but we find that the evidence would have been cumulative. See Guzman v. State, 868 So.2d 498, 508 (Fla.2003) (finding that, in light of the significant impeachment evidence presented at trial, the additional evidence would have merely been cumulative). Defense counsel spent a majority of Prim's cross-examination exploiting his repeated acts of dishonesty. The jury learned about Prim's five felony grand theft convictions and his pending grand theft charge. Thus, Prim's capacity for truthfulness was already significantly impeached.
Also, Prim was not the only trial witness to testify about Jones's confession. Jones's cellmate, Jay Watson, corroborated Prim. He testified that he heard Jones confess to killing a man. Thus, Jones fails to show a reasonable probability that had the additional arrests been disclosed, the result of the proceeding would have been different.

c. Notes Regarding Trooper Don Ross
In his final Brady claim, Jones argues that the State failed to disclose notes in the state attorney's file about Trooper Don Ross. This issue is not preserved because, as Jones admits, it was not addressed by the trial court. "To be preserved, the issue or legal argument must be raised and ruled on by the trial court." Rhodes v. State, 986 So.2d 501, 513 (Fla. 2008), modified 986 So.2d 560 (Fla.2008) (citing § 924.051(1)(b), Fla. Stat. (2006)); Philip J. Padovano, Florida Appellate Practice, § 8.1, at 148 (2007 ed.) ("[T]he aggrieved party must obtain an adverse ruling in the lower tribunal to preserve an issue for review.... Without a ruling or decision, there is nothing to review.").
The claim lacks merit anyway. The alleged Brady information is a piece of paper with notes scribbled on it. At the top, the note indicates that Trooper Ross *582 is a homicide investigator and an "expert re traffic accidentsfatalities, etc." The note then relates various details of Jones's accident. The flip-side reads, "[defendant] very drunk but [victim] probably quite intoxicated too[.] Wit saw [victim] driving earlier in evening, obviously D.U.I. @ 6 p.m." The note indicates that a witness, not the trooper, saw the victim driving under the influence of alcohol. Moreover, admission of the note carried several problems: it cannot be authenticated, the author is unknown, and there is no indication of when or under what circumstances the note was written. In short, Jones has failed to demonstrate that the note is Brady material.

2. Ineffective Assistance: Failure to Present Mitigation Evidence
Jones next claims that he received ineffective assistance of counsel during the penalty phase because counsel failed to investigate or prepare mitigation evidence. Specifically, Jones contends counsel was ineffective for (1) failing to hire a mental health expert and failing to present mental health mitigation; and (2) failing to call witnesses who would have testified about Jones's childhood. We analyze each of these claims below.
We have repeatedly held that to prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his counsel's performance was deficienti.e., unreasonable under prevailing professional norms; and (2) that the deficiency prejudiced the defensei.e., that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Valle v. State, 778 So.2d 960, 965-66 (Fla.2001) (quoting Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)); see also Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
In these circumstances, to determine whether counsel was ineffective, a court must examine not only counsel's alleged failure to investigate and present possibly mitigating evidence, but the reasons for doing so. See Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.") (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052); Rose v. State, 675 So.2d 567, 572 (Fla.1996) (stating that in evaluating the competence of counsel "the actual performance of counsel in preparation for and during the penalty phase proceedings, as well as the reasons advanced therefor," must be considered). Moreover, here, Jones must prove his counsel's performance actually "deprived [him] of a reliable penalty phase proceeding." Rutherford v. State, 727 So.2d 216, 223 (Fla.1998).
Regarding counsel's investigation and preparation of mitigation evidence at the penalty phase, the circuit court concluded that Jones proved neither deficiency nor prejudice. We must now independently review the trial court's legal conclusions, while deferring to the trial court's factual findings if they are supported by competent, substantial evidence. See State v. Riechmann, 777 So.2d 342, 350 (Fla.2000). Analyzing Jones's claims under this standard of review, we affirm the trial court's decision.

*583 a. Mental Health Mitigation
Jones contends that his trial counsel was ineffective for failing to prepare and present evidence of his mental impairment as a mitigating factor. Although we conclude that counsel was deficient in failing to conduct a reasonable investigation of Jones's mental health mitigation, Jones fails to prove prejudice.

i. Deficient Performance
While we do not require a mental health evaluation for mitigation purposes in every capital case, Arbelaez v. State, 898 So.2d 25, 34 (Fla.2005), and "Strickland does not require counsel to investigate every conceivable line of mitigating evidence ... [or] present mitigating evidence at sentencing in every case," Wiggins, 539 U.S. at 533, 123 S.Ct. 2527, "an attorney has a strict duty to conduct a reasonable investigation of a defendant's background for possible mitigating evidence." Riechmann, 777 So.2d at 350. Where available information indicates that the defendant could have mental health problems, "such an evaluation is `fundamental in defending against the death penalty.'" Arbelaez, 898 So.2d at 34 (quoting Bruno v. State, 807 So.2d 55, 74 (Fla.2001) (Anstead, J., concurring in part and dissenting in part)).
Here, counsel was aware of possible mental mitigation. When counsel inherited Jones's case from the public defender's office, the file contained a letter discussing the results of a psychological test (a Minnesota Multiphasic Personality Inventory, or MMPI) conducted on Jones by forensic psychologist Dr. Robert Berland. While the letter suggested "not running out and getting medical testing done," it clearly indicated that Jones suffered from mental illness and needed neuropsychological testing. The letter stated that Jones "has a long-standing psychotic disturbance." It referred to the psychosis as "a biological problem with the brain" that is "either ... genetic or due to brain damage."
Counsel failed to further investigate this potentially mitigating evidence. Despite Dr. Berland's suggestion that Jones suffered from mental impairments, Jones was not evaluated by a mental health expert, and at the penalty phase no expert testimony was presented regarding Jones's "psychotic disturbance." Trial counsel, at a minimum, did not follow up with Dr. Berland; in fact, he could not specifically recall speaking with anybody about Jones's mental health. Trial counsel could only speculate that his decision not to pursue mental health mitigation was based on his review of the record combined with his own observations of Jones. Trial counsel's own testimony makes evident that the decision to abandon mental mitigation was not informed or strategically made after considering the alternatives. Cf. Bowles v. State 979 So.2d 182, 188 (Fla.2008) (finding that trial counsel was not deficient for failing to present an expert to testify to mental mitigation because the decision was reasonable) (citing Gaskin v. State, 822 So.2d 1243, 1248 (Fla.2002) ("Trial counsel will not be held to be deficient when she makes a reasonable strategic decision to not present mental mitigation testimony during the penalty phase because it could open the door to other damaging testimony.")). Because this is not a case where trial counsel was aware of, but rejected, possible mental mitigation in favor of a more favorable strategy, and instead demonstrates a serious lack of effort by trial counsel, we find counsel's performance "unreasonable under the prevailing professional norms." Compare Arbelaez, 898 So.2d at 34-5 (finding counsel's performance deficient due to "lack of a serious and sustained effort" in pursuing mental health *584 mitigation), with Rutherford, 727 So.2d at 222 (finding counsel's decision to "humanize" defendant and not pursue mental health mitigation was a reasonable strategy under the circumstances of the case).
At the evidentiary hearing, Jones established the existence of mental mitigation evidence through Dr. Berland. After conducting the MMPI, reviewing relevant documentation, and interviewing Jones and other lay witnesses, Dr. Berland concluded that Jones was psychotic at the time of the homicide, and thus the statutory mitigating circumstances of extreme mental or emotional disturbance and inability to conform to the requirements of the law would have applied. He explained that although it was hard to differentiate to what extent Jones's actions were a result of mental illness and to what extent they were the product of criminality, "the biological mental illness is a more salient, more persistent adverse influence on his behavior." Dr. Berland also testified that Jones suffered from brain impairment. He could not definitively rule out Jones's post-homicide accident as the cause of the brain injury, but he opined that the brain impairment existed at least two years before his 1991 evaluation.
In rebuttal, the State presented Dr. Albert McClaren, also a forensic psychologist. His conclusions were based solely on Jones's medical and prison records, and a review of the MMPI Dr. Berland conducted in 1991. From the test results, Dr. McClaren opined that Jones had difficulty with close emotional relationships, distrusted others, was socially withdrawn, and was dissatisfied with his relationships with other people. Jones demonstrated anger and resentful qualities that served to exacerbate his alienation from others. Jones's test scores place him in a category of people who see the world as dangerous and other people as rejected and unreliable. People like Jones have a history of criminal activity, are frequently arrested, and their crimes are often poorly planned and executed. Dr. McClaren ultimately concluded that Jones did not suffer from brain impairment or a major mental illness, but he likely suffered from antisocial personality disorder. While Dr. McClaren conceded that Jones's MMPI profile "could be associated with someone who is quite mentally ill," he also said it "could be associated with somebody who is principally a personality disordered."
It is clear from the testimony that there was available expert testimony that would have supported mental health mitigation but was never presented.

ii. Prejudice
While we conclude that trial counsel's performance was deficient, Jones has failed to prove prejudice. He offers nothing more than the blanket assertion that "[h]ad the evidence been presented, the result of the penalty proceedings would have been different." A mere conclusory allegation that the outcome would have been different is insufficient to state a claim of prejudice under Strickland; the defendant must demonstrate how, if counsel had acted otherwise, a reasonable probability exists that the outcome would have been differentthat is, a probability sufficient to undermine confidence in the outcome. See Holland v. State, 916 So.2d 750, 758 (Fla.2005) (defendant's claim that "he was prejudiced because penalty phase counsel's deficiencies substantially impair confidence in the outcome of the proceedings is merely conclusory and must be rejected"); Brown v. State, 894 So.2d 137, 160 (Fla.2004); Armstrong v. State, 862 So.2d 705, 712 (Fla.2003) (finding that a mere conclusory allegation of prejudice was legally insufficient).
Notwithstanding the insufficiency of the claim, we are confident that had the *585 additional mitigation evidence been introduced, there is no reasonable probability that the outcome would have been differenti.e., our confidence in the outcome remains. "Prejudice, in the context of penalty phase errors, is shown where, absent the errors, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different or the deficiencies substantially impair confidence in the outcome of the proceedings." Gaskin v. State, 737 So.2d 509, 516 n. 14 (Fla.1999). Here, the mental mitigation evidence presents a "double-edged sword" and is not sufficient to overcome the substantial aggravation. See Reed v. State, 875 So.2d 415, 437 (Fla.2004) ("An ineffective assistance claim does not arise from the failure to present mitigation evidence where that evidence presents a double-edged sword.").
The mitigating evidence at issue would likely have proved more harmful than helpful. There was ample evidence in the record to impeach Jones's mental health mitigation. The only psychological diagnosis the experts could agree upon was that Jones suffered from antisocial personality disorder. Moreover, every other mental health evaluation Jones underwent confirms that he suffers not from mental illness but antisocial personality disorder. This Court has acknowledged that antisocial personality disorder "is a trait most jurors tend to look disfavorably upon." Freeman v. State, 858 So.2d 319, 327 (Fla. 2003).
Additionally, the only mental evaluations Jones underwent before the murder and before the accident in which he suffered brain injury indicate that he did not suffer from mental illness. The Department of Corrections evaluated Jones's mental status in 1978. At that time, chief psychiatrist Laura Parado and psychiatrist Eduardo Infante both opined that Jones did not suffer from mental illness. The doctors described him as well-oriented, well-developed, and well-nourished. He exhibited well-organized speech patterns, no evidence of thought disorders, and no hallucinations. Jones scored in the upper average range of intelligence on the Wechsler Adult Intelligence Scale. Also, Jones's mental health records are replete with his own admissions that he did not suffer from mental illness or the accompanying symptoms.
Moreover, while there was clearly mental health mitigation available, damaging evidence accompanied it. For example, at the evidentiary hearing the State's expert, reading from various treatises, profiled a defendant with mental health scores similar to Jones. Those sharing Jones's profile demonstrated characteristics frequently found in child molesters and rapists. Their behavior is unpredictable and erratic and may involve strange sexual obsessions and responses. These individuals are typically aggressive, cold, and punitive and have a knack of inspiring guilt and anxiety in others. The State would certainly have seized the opportunity to expose these negative characteristics in addition to highlighting Jones's lengthy criminal history. Such a showing would not have proved favorable to Jones.
Further, in recommending death, the trial court found three aggravating factors: (1) prior violent felony; (2) commission during the course of a robbery; and (3) HAC. In mitigation the court found: (1) Jones's capacity to appreciate the criminality of his conduct or to conform this conduct to the requirements of law was substantially impaired; (2) Jones has suffered from a traumatic and difficult childhood; and (3) Jones had the love and support of his family. Thus, in light of the significant aggravation, Jones has not demonstrated how the enhanced mitigation would create *586 a probability sufficient to undermine our confidence in the outcome. See Singleton v. State, 783 So.2d 970 (Fla.2001) (upholding a death sentence where the trial court found the prior violent felony and HAC aggravating factors and substantial mitigation, including extreme mental or emotional disturbance, impaired capacity to appreciate criminality of conduct or to conform conduct to requirements of law, age of sixty-nine at time of offense, under the influence of alcohol and possibly medication at time of offense, mild dementia, and attempted suicide); Spencer v. State, 691 So.2d 1062, 1066 (Fla.1996) (affirming a death sentence where the trial court found the prior violent felony and HAC aggravating factors and the mitigation included extreme mental or emotional disturbance; impaired capacity to appreciate criminality of conduct or to conform conduct to requirements of law; drug and alcohol abuse; paranoid personality disorder; sexual abuse; honorable military record; good employment record; and ability to function in structured environment); see also Offord v. State, 959 So.2d 187, 191 (Fla.2007) ("HAC is a weighty aggravator that has been described by this Court as one of the most serious in the statutory sentencing scheme."); Sireci v. Moore, 825 So.2d 882, 887-88 (Fla.2002) (noting that prior violent felony conviction and HAC aggravators are "two of the most weighty in Florida's sentencing calculus.").
Because Jones could not demonstrate prejudice, we affirm the trial court's denial of this claim.

b. Background Mitigation
Jones also asserts that trial counsel was ineffective in failing to present additional witnesses to corroborate his sister's testimony about his traumatic childhood. During the penalty phase, Jones and his sister, Betty Stewart, testified at length about his difficult childhood. After trial counsel personally interviewed Jones's family, he selected Stewart to testify to the exclusion of other family members. Trial counsel decided on Stewart because, in addition to helping raise Jones while their mother was incarcerated, she was a 16-year veteran of the Miami-Dade County Police Department and was articulate, measured, and very knowledgeable about Jones's upbringing. In trial counsel's opinion, Stewart was "the best person to explain ... the family dynamics as they were when [Jones] was growing up."
Trial counsel's strategic decision to call Stewart to testify about Jones's childhood was made after considering alternative witnesses. Therefore, Jones has not demonstrated that the trial court erred in finding counsel's performance was reasonable under the norms of professional conduct. See Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) ("[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.")
Even if we were to find counsel's performance deficient, Jones cannot demonstrate prejudice. At the evidentiary hearing, Jones presented several witnesses, including family members and his youth football coach, to support his claim that counsel was ineffective in failing to present sufficient background mitigation. The testimony, however, was cumulative to that presented at the penalty phase. We have repeatedly held that counsel is not ineffective for failing to present cumulative evidence. See, e.g., Darling v. State, 966 So.2d 366, 377-78 (Fla.2007); Whitfield v. State, 923 So.2d 375, 386 (Fla.2005).
Furthermore, based on testimony presented at trial, the trial court found, as a nonstatutory mitigating circumstance, that Jones suffered from childhood trauma and *587 a difficult childhood. The additional testimony would only have added to this mitigation. In light of the aggravation in this case, Jones's sentence would not have been different had the court given more weight to the nonstatutory mitigator.

3. Summary Denial of Claims
In his final claim, Jones appeals the summary denial of two claims of ineffective assistance of counsel: (1) failing to object to the use of shackles during voir dire; and (2) failing to object to improper prosecutorial argument. We discuss these claims in turn.
To support summary denial of a claim, "the trial court must either state its rationale in the order denying relief or attach portions of the record that would refute the claims." Nixon v. State, 932 So.2d 1009, 1018 (Fla.2006). Where no evidentiary hearing is held, we must accept the defendant's factual allegations as true to the extent the record does not refute them. However, the defendant must establish a legally sufficient claim. Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000).
To determine the facial or legal sufficiency of a claim of ineffective assistance of counsel, the court applies Strickland's two-pronged test. The defendant must establish both that his counsel's performance was deficient and that he was prejudiced. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. To demonstrate deficient performance, Jones must show that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. To demonstrate prejudice he must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Applying this standard, we affirm the summary denial of Jones's claims.

a. Shackling
Jones contends that trial counsel was ineffective for failing to object to his being shackled in front of members of the venire from which the ultimate jury was selected. At the Huff hearing, the presiding judge, William Gary, who also presided over the trial in which Jones was convicted and sentenced, emphatically denied that Jones was shackled during voir dire or any subsequent phase of the trial. We deny Jones's claim not based on Judge Gary's repudiation, however, but instead because the claim is legally insufficient: Jones has not established prejudice.
This Court has consistently held that to be entitled to an evidentiary hearing on a motion claiming ineffective assistance of counsel, the defendant must allege specific facts establishing both deficient performance of counsel and prejudice to the defendant. See Rhodes v. State, 986 So.2d 501, 513-14 (Fla.2008) (noting that a claim of ineffective assistance of counsel will be summarily denied absent specific factual allegations of both a deficiency in performance and prejudice); Doorbal v. State, 983 So.2d 464, 483 (Fla.2008) (reminding "attorneys who represent capital defendants of the importance of compliance with minimal pleading requirements to allege a claim of ineffective assistance of trial counsel" and repeating that insufficiently pled claims "may not receive an evidentiary hearing or be considered by the trial court on the merits"); Spera v. State, 971 So.2d 754, 758 (Fla.2007) (holding that a motion claiming ineffective assistance of counsel must include facts establishing both deficient performance of counsel and prejudice to the defendant and instructing that the failure to sufficiently *588 allege both prongs results in summary denial of the claim). We recognize that the use of shackles in view of the jury has the potential to prejudice a defendant. See Weaver v. State, 894 So.2d 178 (Fla.2004) (citing Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1240 (9th Cir.2001) (discussing the prejudice concerns posed by shackles)). Here, however, Jones makes a conclusory allegation of prejudice[4] and fails to specifically plead any prejudice sufficient to warrant an evidentiary hearing. Jones does not contend that any venire members who ultimately sat on his jury saw him in restraints. Absent allegations that the actual jurors were exposed to Jones in shackles, he cannot demonstrate prejudice. Sireci v. Moore, 825 So.2d 882, 887-88 (Fla.2002) (finding no prejudice where the jury did not see defendant in shackles.)
Overall, Jones has failed to demonstrate how any alleged deficiency in counsel's performance in failing to challenge the use of shackles "so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined." Gore v. State, 846 So.2d 461, 467 (Fla. 2003). Therefore, while we agree with Jones that the trial judge's testimony was insufficient to deny an evidentiary hearing on this claim, we nonetheless affirm the denial of this claim as legally insufficient. See Armstrong v. State, 862 So.2d 705, 712 (Fla.2003) (finding no error in the trial court's denial of the defendant's claim, in which he asserted a mere conclusory allegation of prejudice without any degree of specificity as to how the outcome of the proceeding would have been different).

b. Improper Prosecutorial Argument
Jones next claims that the postconviction court erred in summarily denying his claim that counsel was ineffective for failing to object to three instances of prosecutorial misconduct.[5] We disagree, however, because even accepting Jones's assertions as true and assuming trial counsel *589 was deficient in failing to object to the improper prosecutorial argument, Jones cannot demonstrate prejudice. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.").
For improper argument to require a mistrial, the comments must "deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than ... it would have otherwise." Walls v. State, 926 So.2d 1156, 1167 (Fla.2006) (quoting Spencer v. State, 645 So.2d 377, 383 (Fla. 1994)). Jones has not shown that the prosecutor's comments rose to this level. See Darling, 966 So.2d at 382 ("The defendant carries the burden to overcome the presumption of effective assistance....")

B. Petition for Writ of Habeas Corpus
Jones presents three claims for habeas corpus relief, arguing that: (1) Florida's capital sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (2) section 921.141, Florida Statutes and the standard penalty phase jury instructions improperly shifted the burden of proof to Jones to prove that death was inappropriate; and (3) the standard penalty phase jury instructions dilute the jury's responsibility by labeling their verdict as advisory and not binding. We address each claim in turn.

1. Ring Claims
Jones contends that Florida's capital sentencing scheme is unconstitutional under Ring because: (1) the judge rather than the jury makes the findings of fact necessary to impose the death sentence; (2) the jury was not required to reach a unanimous jury verdict as to a death sentence recommendation; and (3) the State was not required to convince the jury that death was a proper sentence beyond a reasonable doubt. We have held, however, that Ring does not apply retroactively. See Johnson v. State, 904 So.2d 400, 412 (Fla.2005) ("Ring, although an important development in criminal procedure, is not a `jurisprudential upheaval' of `sufficient magnitude to necessitate retroactive application.'"). Ring was decided seven years after Jones's conviction became final and therefore does not apply.

2. Improper Burden Shifting
Jones also contends that the standard penalty phase jury instructions improperly shift the burden to the defendant to establish life is the appropriate penalty. Jones's claim is both procedurally barred and without merit. We have routinely required "[c]laims challenging the constitutionality of Florida's capital sentencing procedures [to] be raised at trial and on direct appeal." Miller v. State, 926 So.2d 1243, 1256 (Fla.2006); see also Rodriguez v. State, 919 So.2d 1252, 1280 (Fla.2005) ("Claims regarding the adequacy or constitutionality of jury instructions should be raised on direct appeal."). Jones did not raise his jury instruction challenge at trial or on direct appeal, therefore his claim is barred. Moreover, "this Court has repeatedly rejected claims that the standard jury instruction impermissibly shifts the burden to the defense to prove that death is not the appropriate sentence." Miller, 926 So.2d at 1257.

3. Dilution of the Jury's Responsibilities
In his final habeas claim, Jones challenges the penalty phase jury instruction *590 that purportedly dilutes the jury's responsibility by labeling the jury's verdict as advisory and not binding. Not only is this claim procedurally barred, Blackwood v. State, 946 So.2d 960, 976 (Fla.2006), we have repeatedly rejected it. We have consistently held that the standard penalty phase jury instructions fully advise the jury of the importance of its role, correctly state the law, do not denigrate the role of the jury, and do not violate Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). See Brown v. State, 721 So.2d 274, 283 (Fla.1998); Miller, 926 So.2d at 1257; Perez v. State, 919 So.2d 347, 368 (Fla.2005); Card v. State, 803 So.2d 613, 628 (Fla.2001).

III. CONCLUSION
For the reasons stated, we affirm the trial court's denial of postconviction relief and deny Jones's petition for writ of habeas corpus.
It is so ordered.
QUINCE, C.J., and WELLS, PARIENTE, and LEWIS, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
CANADY and POLSTON, JJ., did not participate.
ANSTEAD, J., concurring in part and dissenting in part.
While I agree with most of the conclusions reached in the majority opinion, I cannot agree with the majority's decision to uphold the trial court's summary denial, without a hearing, of two of Jones' ineffective assistance of counsel claims: the first based upon defense counsel's failure to object to the defendant's shackling at trial, and the second based upon defense counsel's failure to object to the State's direct comment during closing argument on the defendant's constitutional right not to testify. We should remand these claims for an evidentiary hearing.
Contrary to the express allegations of the defendant's postconviction motion, the majority erroneously concludes that Jones' claim fails because he did not allege that jurors were exposed to Jones in shackles. Majority op. at 588. In his postconviction motion, Jones specifically alleged that he "was shackled in view of the jury at his capital trial. During voir dire, Mr. Jones was shackled in front of the venire. Members of the venire, from which the ultimate jury panel was selected, had a full view of the shackles which were placed on Mr. Jones." Amended Motion to Vacate Judgments of Conviction & Sentence with Special Request for Leave to Amend at 75, State v. Jones, No. 91-1932-AF (Fla.2d Cir.Ct. Mar. 19, 2003). Jones' appellate counsel has also asserted that postconviction counsel was prepared to present witnesses at an evidentiary hearing to demonstrate that Jones was shackled in front of the jury, including members of the jail staff, Jones' trial attorney, and at least one member of the media.
Further, while the majority opinion acknowledges that the postconviction judge's spontaneous declaration that shackling did not occur was insufficient to deny the claim or an evidentiary hearing, it ignores the failure of the State, on appeal, to refute the assertion that an evidentiary hearing is necessary to determine what actually happened. Under Florida Rule of Criminal Procedure 3.851, the postconviction rule for capital cases, we have created a presumption in favor of evidentiary hearings on claims that are facially sufficient and require a factual resolution. A motion is facially sufficient if it alleges specific facts that "demonstrate a deficiency in performance that prejudiced the defendant." Spera v. State, 971 So.2d 754, 758 *591 (Fla.2007) (quoting Jones v. State, 845 So.2d 55, 65 (Fla.2003)) (stating that facial sufficiency for a motion alleging ineffective assistance of counsel is determined by applying the Strickland test). "[I]f the trial court finds that the motion is facially sufficient, that the claim is not conclusively refuted by the record, and that the claim is not otherwise procedurally barred, the trial court should hold an evidentiary hearing to resolve the claim." Jacobs v. State, 880 So.2d 548, 551 (Fla.2004). In sum, our case law provides "if a movant ... alleges a valid legal claim with sufficient factual support, and complies with the oath and contents requirement, then he will ordinarily have stated a facially sufficient postconviction motion." Id. at 550. In Jacobs, we reiterated that "[t]he rule does not require more." Id. at 553.
Further, the majority has erroneously refused to acknowledge that "shackling is `inherently prejudicial.'" Deck v. Missouri, 544 U.S. 622, 635, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) (quoting Holbrook v. Flynn, 475 U.S. 560, 568, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986)). In Deck, the Supreme Court found a due process violation for a trial court, without justification, to order a defendant to wear shackles visible to the jury for a penalty phase proceeding. Id. The Court assumed prejudice, holding no "actual prejudice" showing by the defendant was required; rather, the Court placed the burden on the State to show beyond a reasonable doubt the shackling did not contribute to the verdict. Id. We, too, have consistently held that shackling is inherently prejudicial, and have held the trial court must conduct a hearing on the necessity of restraints before requiring the restraints. Bryant v. State, 785 So.2d 422, 429 (Fla.2001) (citing Bello v. State, 547 So.2d 914 (Fla. 1989)); cf. Hendrix v. State, 908 So.2d 412, 425-26 (Fla.2005) (where the shackles were hidden from the jury, and court made an individual determination defendant was an escape risk, it was not ineffective assistance to fail to object because the objection was unlikely to produce any result). The majority ignores this controlling law.
Florida's district courts have followed our case law. For example, the Fourth District Court of Appeal has found facially sufficient a rule 3.850 motion alleging ineffectiveness of defense counsel who did not object when the defendant stood in front of the jury panel for identification purposes while shackled. Hodges v. State, 946 So.2d 1244 (Fla. 4th DCA 2007). That court similarly found sufficient a rule 3.850 motion alleging defense counsel did not object when the defendant appeared at trial in prison attire and leg shackles. Jensen v. State, 964 So.2d 812 (Fla. 4th DCA 2007). The Fourth District reversed and remanded both cases so an evidentiary hearing could be held. The Second District Court of Appeal has likewise remanded for an evidentiary hearing where a defendant alleged trial counsel was ineffective for allowing him to be tried in shackles and a prison jumpsuit. Cramer v. State, 843 So.2d 372, 372-73 (Fla. 2d DCA 2003).
Because of the express and unambiguous allegations of the defendant's postconviction motion stating that defendant was shackled in view of the jury, considered with the strong presumption against the permissibility of shackles established in our case law, the defendant's motion is clearly facially sufficient to state a claim as to the ineffectiveness of trial counsel. Here, the postconviction judge spontaneously declared that based on his memory the defendant did not have restraints at trial, so he was denying the claim as legally insufficient.[6] However, under Jacobs, *592 the postconviction court must look to the claim alone to determine sufficiency. See Jacobs, 880 So.2d at 550, 553. On appeal, the State does not dispute the sufficiency of the postconviction allegations or the lack of record support to conclusively refute the claim, but instead refers to the failure of the defendant to offer evidence on this issue at the evidentiary hearing that was granted on other issues. Of course, that argument is self-defeating since the trial court did not grant a hearing on this claim while erroneously relying on its own recollection in resolving a disputed issue of fact.
Rule 3.851 mandates an evidentiary hearing in this case since that is the only way the claim can be resolved. Jones has expressly alleged in plain and unambiguous terms that his counsel was ineffective for not objecting to the jury seeing him shackled. If evidence is presented to support these facts, Jones would have a possible ineffective assistance of counsel claim, depending on the degree of the jury's awareness and the type of prejudice that may have occurred. Cf. Deck, 544 U.S. at 634, 125 S.Ct. 2007. Thus, I would find his claim to be facially sufficient and remand for an evidentiary hearing.

IMPROPER PROSECUTORIAL ARGUMENT
Jones further alleged in his postconviction motion that improper prosecutorial arguments were made at the guilt and penalty phases of his trial without objection by defense counsel. During closing argument at the guilt phase, it is alleged the prosecutor made an improper comment on Jones' Fifth Amendment right not to testify:
They put Mr. Hollis out that night and Harry Jones followed the victim back outside. Johnnie Mae Hollis does not know what happened after that and only through piecing together the evidence do we know what happened after that. We do not know how he persuaded George Young to drive him further to go up further in the northeast part of the county up to Boat Pond. And that's one of those questions like I told you at the outset that we simply are never going to be able to answer because only two people know how he talked him into that. Only two people know and one of them is dead. I've got a couple of theories, but they're theories. I can speculate like anybody else, but I don't know.
(Emphasis added.) This was clearly a direct comment on the surviving defendant's failure to testify and answer the prosecutor's question. The postconviction court denied this claim without granting an evidentiary hearing and concluded the remarks were not improper and, alternatively, that the claim should have been raised on direct appeal. However, neither of these reasons has merit.
This Court has previously recognized the substantial prejudicial effect of a prosecutor's improper comment on a defendant's right to remain silent. In fact, for many years we recognized any such comments as fundamental constitutional error not subject to the harmless error rule. State v. DiGuilio, 491 So.2d 1129, 1131 (Fla.1986). Under the DiGuilio rule such comments, when objected to, may lead to a mistrial or reversal on appeal. We have also recognized that counsel's failure to object to an improper comment by the prosecution may serve as a basis for a postconviction claim. Darling v. State, 966 So.2d 366, 385 (Fla.2007) (finding the defendant had stated an arguable basis for finding counsel deficient for failing to object to improper prosecutorial comments). Thus an evidentiary hearing should have been held. Cf. Childers v. State, 782 So.2d *593 513, 519 (Fla. 1st DCA 2001) (remanding for an evidentiary hearing on counsel's alleged deficiency in questioning a witness because although the "line of questioning may have been counsel's strategy ... `such a finding generally should be made only after an evidentiary hearing.'" (quoting Porter v. State, 626 So.2d 268 (Fla. 2d DCA 1993))).
Because it appears the postconviction motion stated two facially sufficient claims not conclusively refuted by the record, I would remand these claims for an evidentiary hearing for findings of fact to be made based on evidence presented at the hearing both as to what actually happened and defense counsel's explanations.
NOTES
[1] Jones raised the following claims on appeal: (1) the trial court failed to suppress illegally seized evidence; (2) the court admitted in evidence gruesome photographs of the victim; (3) the murder in the course of a felony aggravating circumstance fails to narrow the class of murderers eligible for the death penalty; (4) the HAC aggravator is unconstitutional; (5) the trial court erred in finding the murder was HAC; and (6) the trial court erred in failing to adequately consider uncontroverted evidence of two mitigating circumstances.
[2] These claims include: (1) the Brady and Giglio claims raised in this appeal; (2) the following ineffective assistance of counsel claims: failing to discover that witness Prim was a crack addict; failing to discover that Prim was under the influence of cocaine when he testified at trial; failing to investigate and discover that the victim's girlfriend's business had been vandalized some time prior to trial and the victim's home burglarized before the murder; failing to effectively impeach witness Kevin Prim, with his four convictions; failing to effectively cross-examine witness Paul Fontaine; and failing to investigate where Defendant was living and how he did his laundry; (3) claims of newly discovered evidence, namely that Kevin Prim had charges disposed of by the State in exchange for his testimony; Prim knew at the time he made a statement to Detective Mike Woods that Defendant's lawyer was Gene Taylor; and Defendant was working for Paul Fontaine; (4) trial counsel was ineffective for failing to investigate and prepare mitigation, as raised in this appeal; (5) Defendant was denied his constitutional rights under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (6) section 921.141, Florida Statutes (2003), violates the Sixth, Eighth, and Fourteenth Amendments; (7) that he was shackled in front of and in view of the jury, as raised in this appeal; (8) counsel was ineffective for failing to object to prosecutorial argument; (9) Florida's capital sentencing scheme denies Defendant his due process rights and is cruel and unusual punishment; (10) the contemporaneous felony aggravator was duplicative of the basis for the death penalty; (11) penalty phase instructions were improper; (12) the jury was not properly instructed as to its responsibility at the penalty phase of trial; and (13) the court proceedings were fraught with procedural and substantive errors.
[3] Huff v. State, 622 So.2d 982 (Fla. 1993) (requiring a hearing upon the filing of a postconviction motion and answer to determine whether an evidentiary hearing is needed and to hear argument on legal issues).
[4] Jones's prejudice allegation, in its entirety, reads: "The shackling of Mr. Jones rendered his trial fundamentally unfair. Mr. Jones'[s] trial and penalty phase were prejudiced, and he is entitled to a new trial and/or new penalty phase."
[5] Jones contends that his counsel was ineffective for failing to object to the first comment below because it was an improper comment on his right to remain silent, the second comment because it was denigrating and disparaging to the defense, and the third comment because it was an improper "future dangerousness" argument.

(1) We do not know how he persuaded George Young to drive him ... to Boat Pond. And that's one of those questions... we are simply never going to be able to answer because only two people know how he talked him into that. Only two people know and one of them is dead. I've got a couple theories, but they are theories.
(2) I think what you have just experienced may be best referred to as a shotgun of the imagination defense. It is not truly a defense. It's a distraction. In this case I hope an attempt to distract you. You see, when you sit up here or stand up here, rather and argue about whether or not Mike Woods told Harry Jones that the man was missing, what does that have to with why Harry Jones was lying to him about the truck? What effect would that have one way or the other?
(3) None of us here knows when our time is going to get cut short by an accident or disease. But to have it stolen from us for money, out of boredom, stolen from us by a deliberate and cruel act, the life of this Defendant is no doubt precious to him, but this terrible crime, when you view the aggravating circumstances, requires the most terrible penalty. Does this diminish us, does this make us less, does this reduce us or lower us to the level of someone who goes out and deliberately takes a life? No. No, because the difference between murder and self defense, between crime and punishment, is all the difference in the world. We do not do this, we do not ask you to do this out of vengeance or anger.
[6] Of course, an evidentiary hearing may establish that the trial judge's memory was correct. But as the record stands that is a disputed issue of fact.