## Richmond

RALPH JUNIOR MORRIS v. COMMONWEALTH OF VIRGINIA.

October 9, 1967.

Record No. 6534.

Present, Eggleston, C.J., Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.*

*S. Page Higginbotham* (*Higginbotham & Fry*, on brief), for plaintiff in error.

*M. Harris Parker, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

---

*Justice Spratley, prior to the effective date of his retirement, participated in the hearing and concurred in the disposition of the case.

At the December, 1965 term of the court below Ralph Junior Morris was indicted for the murder of Donald Lee Guyer. Upon arraignment he pleaded not guilty, was tried by a jury, found guilty of murder in the second degree, and his punishment fixed at confinement in the State Penitentiary for a term of twenty years. Judgment was entered on the verdict and we granted the defendant a writ of error.

The asignments of error do not question the sufficiency of the evidence to sustain the verdict and judgment but relate to the rulings of the lower court on a number of procedural matters which the defendant says were erroneous and prejudicial and entitle him to a new trial. The pertinent facts may be stated thus:

On September 18, 1965, about 10:00 P. M., an altercation occurred at a public dance hall in Rockingham county near Harrisonburg, during which Guyer, age 20, was shot and killed by a bullet fired from a 22-caliber pistol. During the altercation Charles E. Deavers, age 19, and the defendant Morris, age 21, were also shot and wounded.

The evidence on behalf of the Commonwealth showed that during the altercation Donald Conley, a relative of Morris, was beaten by unidentified persons, and that Morris went to his car parked nearby, took from the glove compartment a pistol, walked over to where the fight was in progress, and shot Guyer and Deavers at close range. Morris then ran to his car and hurriedly left the scene. At the trial Morris denied that he fired the shots which struck Guyer and Deavers, claiming that he did not own or have in his possession a pistol. He said that he did not know who had fired the shots. However, he admits in his brief that the evidence on behalf of the Commonwealth is sufficient to sustain the jury's finding that he fired the shot which killed Guyer.

The defendant likewise testified that he did not know who fired the shot which struck him in the right hip. He told the police on the night of the shooting that he was "hit by a stray bullet" during the fracas. An agent of the Federal Bureau of Investigation testified that he had examined the clothing identified as having been worn by Morris at the time of the shooting and that powder marks on the right-hand trousers pocket showed that a pistol had been discharged in that pocket. The Commonwealth contended that this evidence would support a finding that the wound which Morris received was self-inflicted in this manner.

Shortly after the shooting Guyer and Deavers were taken by an ambulance to the Rockingham Memorial Hospital in Harrisonburg. There Guyer was found to be dead and Deavers was admitted for treatment. About the time that ambulance arrived at the hospital the defendant Morris came to the same hospital, reported that he had been shot, and was admitted for treatment. Morris testified that immediately after the shooting he left the dance hall in his car and that not until he had gotten into the vehicle did he realize that he was shot. When he found that he had been wounded he went to the hospital for treatment where he remained several days. A bullet found lodged in his right leg was not removed.

Early the next morning (September 19) Deputy Sheriff Glen Wilcox came to the hospital and asked a registered nurse on duty there to give him Morris's clothes. In obedience to this request, the nurse took the clothes from the wardrobe in the room which had been assigned to Morris and turned them over to the officer who in turn delivered them to the F.B.I. for examination. At the time she did so Morris was "under sedation" and asleep in his room.

On September 19, the day following the shooting, the attorney for the Commonwealth filed with a local justice of the peace an affidavit for a warrant authorizing the search of the defendant's automobile which was stated to be at or near the Rockingham Memorial Hospital. Pursuant to that affidavit a warrant was issued and the vehicle was searched by an officer. The search revealed no weapon but a box containing a number of 22-caliber cartridges was found in the glove compartment. The F.B.I. agent testified that these cartridges contained lead bullets of the same characteristics as the bullet which was removed from Guyer's body and had caused his death.

[1] At the trial the prosecution offered in evidence the defendant's clothing which had been taken from his room at the hospital under the related circumstances. Counsel for the defendant objected on the ground that such taking was without the defendant's consent, without a lawful search warrant, and constituted an unreasonable search and seizure of his personal effects. The trial court overruled that objection, the clothes were admitted in evidence, and as has been said, the F.B.I. agent testified about the powder marks which he found on the trousers pocket and what they indicated. This ruling of the court in admitting the clothes in evidence is one of the defendant's principal assignments of error.

We think the assignment is well taken and that the admission of

the clothes in evidence was error. Admittedly, no search warrant had been procured for the officer's search of the defendant's room and the taking of his personal effects. Only where incident to a valid arrest or in exceptional circumstances may a lawful search and seizure of personal effects be made without a search warrant and the burden is on the prosecution to show a justification for such seizure. *United States* v. *Jeffers*, 342 U. S. 48, 51, 72 S. Ct. 93, 95, 96 L. ed. 59, 64.

In the present case no such justification was shown. The search was not incident to the defendant's arrest which was not until September 22, three days later. There is no evidence that the articles seized were about to be removed or concealed. The defendant in no way consented to the seizure, for as has been said, he was asleep and under sedation. There is no evidence that he authorized the nurse to deliver his clothes to the officer, nor is there any evidence that she had control of the defendant's room or of his clothes and had the right to consent to the taking of these personal effects.

In *United States* v. *Jeffers, supra,* it was held that a hotel room assigned to and paid for by a guest may not lawfully be entered without a search warrant. 342 U. S. at 51, 52, 72 S. Ct. at 95, 96 L. ed. at 64. See also, *Lanza* v. *State of New York*, 370 U. S. 139, 143, 82 S. Ct. 1218, 1220-1221, 8 L. ed. 2d 384, 387-388. We think the same is true of the room in the hospital which had been assigned to and paid for by the defendant. Consequently, we hold that the seizure by the officer of the defendant's clothes under the related circumstances was in violation of the rights guaranteed to him by the Fourth Amendment to the Federal Constitution. This being so, the defendant's clothes were not admissible in evidence.

[2] The defendant next contends that the trial court erred in admitting in evidence the cartridges which were found in and taken from his automobile during a search of that vehicle pursuant to the search warrant. The avowed purpose of the warrant was to search for "a weapon used in the commission of a crime." The affidavit stated that it should be issued "because of reliable information received" by affiant. The defendant contends that this allegation was insufficient to constitute probable cause for the issuance of the search warrant, that hence it was invalid and the evidence obtained as the result of the search was inadmissible.

In *Riggan* v. *Virginia*, 384 U. S. 152, 86 S. Ct. 1378, 16 L. ed. 2d. 431 (reversing 206 Va. 499, 144 S. E. 2d 298), it was held that an affidavit so worded did not provide sufficient basis for the finding of

probable cause for the issuance of a search warrant. That decision[1] is controlling in the present case and sustains the contention of the defendant.

[3] Complaint is next made that the trial court erred in refusing to grant defendant's Instruction "A" which reads as follows: "The court instructs the jury that a witness may be impeached and discredited by proof of prior inconsistent statements, and if the jury believe from the evidence in this case that any witness made inconsistent statements concerning material facts in this case, *then the jury has the right to disregard his whole testimony*, or to give it such weight as they think it is entitled." (Italics supplied.)

This instruction was properly refused. The fact that a witness makes inconsistent statements concerning material facts in a case does not render his whole testimony nugatory or justify the jury in disregarding it. It is the province of the jury to pass upon such inconsistent statements and to give or withhold their assent to the truthfulness of the particular statement. *Atlantic Greyhound Corp.* v. *Shelton*, 184 Va. 684, 696, 36 S. E. 2d 625, 630; *Richmond Oil Equipment Co.* v. *W. T. Holt, Inc.*, 189 Va. 334, 339, 53 S. E. 2d 11, 13, and cases there cited.

The other assignments of error deal with matters which have become moot or are not likely to occur on a new trial. Consequently they need not be discussed.

For the error of the trial court in admitting in evidence the clothes of the defendant and articles found in his automobile, the judgment is reversed and the case remanded for a new trial.

*Reversed and remanded.*

---

[1] The decision was handed down on May 2, 1966 and subsequent to the disposition of the present case in the trial court.