COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Fulton and Callins
Argued at Richmond, Virginia


JAMAR A. MEREDITH, SOMETIMES KNOWN AS
 JAMAR ANTOINE MEREDITH
                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1006-22-2                  JUDGE JUNIUS P. FULTON, III
                                                JANUARY 30, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT FOR THE CITY OF RICHMOND
W. Reilly Marchant, Judge

Meghan Shapiro, Senior Appellate Attorney (Jennifer T. Stanton,
Senior Appellate Attorney; Indigent Defense Commission, on
briefs), for appellant.

Susan Hallie Hovey-Murray, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Jamar A. Meredith appeals the decision of the trial court denying his motion to suppress

evidence found during the warrantless search of his clothing, which an emergency room nurse gave

to police after treating Meredith for a gunshot wound.  Finding no error, we affirm.

BACKGROUND

"On appeal of the denial of a motion to suppress, we view the evidence in the light most

favorable to the Commonwealth."  *Joyce v. Commonwealth*, 72 Va. App. 9, 13 (2020) (quoting

*Carlson v. Commonwealth*, 69 Va. App. 749, 757 (2019)).  On July 15, 2020, Meredith drove

himself to a community hospital after sustaining a gunshot wound.  Hospital staff removed his

clothing to provide treatment and placed his personal effects in an open brown paper bag in his

treatment room.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Detective Kevin Hyde arrived at the hospital to investigate the shooting shortly after midnight. He found Meredith in an emergency ward treatment room with "three or four" other people, including hospital personnel. When Hyde questioned Meredith about the shooting, he gave a "run-around story" and initially refused to provide information beyond revealing that that he was shot in Richmond. After Detective Hyde ended the interview, a nurse gave him the brown paper bag containing Meredith's bloody clothing, which had been cut from his body during the administration of emergency medical care. Hyde did not ask for the clothes; rather, the nurse gave him the bag as he was leaving. At that point, Hyde did not know whether appellant was a victim or a perpetrator of any crime.

Detective Hyde then examined Meredith's vehicle, which was parked about 30 yards from the hospital entrance. Meredith's identification card and bank card were on the bloody driver's seat. In addition, Hyde saw a black semi-automatic handgun in plain sight between the driver's seat and the door. Detective Hyde opened the unlocked door and seized the handgun. He then took Meredith's bloody clothes to police headquarters to place them in the forensics dry room. While checking the clothes' pockets, Detective Hyde found a tic tac container holding a "gray powdery substance" later determined to be Eutylone, a Schedule I controlled substance.

Meredith moved to suppress the Eutylone, alleging that Detective Hyde obtained it in violation of the Fourth Amendment. At the suppression hearing, Detective Hyde testified that there had been three homicides and five shootings in Richmond on the night Meredith was shot. When Hyde arrived at the hospital, Meredith was being treated in an emergency ward treatment room, with the door open, and medical staff already had cut off and removed his clothes. When the nurse handed him the brown bag, he could not see into the bag but was aware that it contained Meredith's clothing. The door to Meredith's treatment room remained open while Hyde was there.

The trial court denied Meredith's motion to suppress, finding that Meredith "did not have a reasonable expectation of privacy in the hospital or in the bag of ripped, bloody clothing voluntarily given to the Officer by the medical staff." Following the trial court's ruling, Meredith entered a conditional guilty plea, preserving his right to appeal the trial court's judgment on his motion to suppress.

ANALYSIS

"When this Court reviews a trial court's ruling on a motion to suppress, 'the appellant bears the burden of showing that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" *Scott v. Commonwealth*, 68 Va. App. 452, 458 (2018) (quoting *Sanders v. Commonwealth*, 64 Va. App. 734, 743 (2015)). "[A]n appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (alteration in original) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)).

The Fourth Amendment of the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "'[T]he touchstone' of Fourth Amendment analysis has been 'the question whether a person has a "constitutionally protected reasonable expectation of privacy."'" *Sanders*, 64 Va. App. at 743 (quoting *Oliver v. United States*, 466 U.S. 170, 177 (1984)). "Determining whether particular action by law enforcement constitutes a search for purposes of the Fourth Amendment involves a two-pronged test." *Id.* at 744. "First, a defendant must show 'that he personally has an expectation of privacy in the place searched.'" *Id.* (quoting *Rideout v. Commonwealth*, 62 Va. App. 779, 786 (2014)). "Second, he must prove that his

expectation is objectively 'reasonable' based on 'a source outside of the Fourth Amendment.'" *Id.* (quoting *Rideout*, 62 Va. App. at 786). A "defendant may establish such a source by reference to either: (1) 'concepts of real or personal property law' or (2) 'understandings that are recognized and permitted by society.'" *Id.* (quoting *United States v. Jones*, 565 U.S. 400, 408 (2012)).

Meredith argues that the trial court erred by denying his motion to suppress based on the court's "finding [that] there was no reasonable expectation of privacy in Mr. Meredith's clothing." He maintains that he had a reasonable expectation of privacy "in his hospital room clothing" because he was in a private hospital room and did not consent to any search. He also argues that Detective Hyde directed the hospital nurse to give him the bloody clothing even though Hyde did not suspect that Meredith was the perpetrator of any offense. Thus, Meredith insists that a warrant was required to search his clothing and no exception to the warrant requirement applied.

In contrast, the Commonwealth argues that Meredith was not actually in a private hospital room, but a public room located in the emergency ward. Further, the Commonwealth disagrees with Meredith's characterization that Detective Hyde directed the nurse to hand over Meredith's clothing; the Commonwealth asserts that the record demonstrates that the nurse offered the bag containing Meredith's clothing to Detective Hyde after removing the clothing during the administration of medical care to Meredith. This, the Commonwealth argues, did not even constitute a search under the Fourth Amendment. We agree with the Commonwealth, to an extent. However, the Commonwealth's arguments on brief do not sufficiently address the privacy interests that Meredith asserts in the pockets of his clothing. Nevertheless, we affirm, holding that the trial court's ruling below was right for a different reason.

Meredith primarily relies on two cases to support his argument: *Morris v. Commonwealth*, 208 Va. 331 (1967), and this Court's unpublished opinion in *Spaulding v. Commonwealth*, No. 0394-15-1, 2016 WL 489803 (Va. Ct. App. Feb. 9, 2016).

Meredith relies on *Morris* in asserting that he had a privacy interest in the hospital room he was treated in. Meredith's reliance on *Morris* is unpersuasive. In *Morris*, the defendant was shot during an altercation near a dance hall, apparently by his own .22 caliber pistol firing accidentally in his pocket, and "went to the hospital for treatment where he remained several days." 208 Va. at 333. The day after Morris arrived at the hospital, a police officer arrived and "asked a registered nurse on duty there to give him [the defendant]'s clothes." *Id.* The nurse removed the clothes from the "wardrobe in the room which had been assigned to [the defendant]," while he was sedated and asleep, and gave them "to the officer." *Id.* The Supreme Court held that the defendant's hospital room, which he "had been assigned . . . and paid for," was equivalent to a hotel room and "may not lawfully be entered without a search warrant." *Id.* at 334 (citing *United States v. Jeffers*, 342 U.S. 48, 51-52 (1951)). Further, the Supreme Court later clarified that a search and seizure had, in fact, taken place, given the private nature of the room and the fact that the officer directed the nurse to retrieve Morris's clothes. *See Craft v. Commonwealth*, 221 Va. 258, 262 (1980) (reviewing the facts and holding of *Morris*).

*Morris* hinged on the fact that the defendant had a *private* hospital room that was assigned to him and in which he was receiving long term care over multiple days. 208 Va. at 334. By contrast, we have held that when a defendant is in an open treatment room in a hospital emergency ward, he does not have a reasonable expectation of privacy that would require a search warrant. *See Matthews v. Commonwealth*, 30 Va. App. 412, 415 (1999). In *Matthews*, the defendant, suspected of abduction, was in a car accident and "was placed in a treatment room within the emergency ward so that intravenous fluids could be administered." *Id.* at 413. Police arrived and entered Matthew's treatment room where they read him his *Miranda*[1] rights, questioned him, and "[w]ith his consent . . . seized his clothing and personal effects." *Id.*

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

On appeal, Matthews "contend[ed] that the police violated his Fourth Amendment rights when they entered the emergency ward treatment room . . . [and that] all evidence subsequently seized from the room was illegally obtained and should have been suppressed." *Id.* at 414. This Court found that Matthews did not have a reasonable expectation of privacy in the "emergency ward treatment room." *Id.* In distinguishing *Morris*, we emphasized that the room was dedicated "for the provision of emergency ward treatment" and not dedicated to long term care, the door was open, members of the defendant's family were in the room, and medical personnel freely entered and left the room to provide care. *Id.* The defendant's "contention that the room was separate from the emergency ward and was private [wa]s without evidentiary support. *The room was a part of the emergency ward and, as such, afforded Matthews no expectation of privacy.*" *Id.* at 415 (emphasis added). Here, just as in *Matthews*, Meredith had no reasonable expectation of privacy in the room itself. Meredith's treatment room was part of the emergency ward, its door was open, other people were present in the room, and there was no indication that anyone objected to Detective Hyde's presence there. *See id.* Therefore, Meredith had no privacy interest in the emergency ward treatment room, itself. This does not end the analysis, however, as Meredith also argues that he had a separate privacy interest in his clothing.

Turning to Meredith's clothing, itself, we agree with Meredith that, pursuant to *Spaulding*, he retained a privacy interest in the pockets of his clothing. *Spaulding* is an unpublished case,[2] which addressed the discovery of narcotics as the result of a search of the defendant's pants pocket in a moving ambulance while the defendant was conscious. *Spaulding*, slip op. at 2, 2016 WL 489803, at *1. *Spaulding* itself stated that "[a]s the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites

---

[2] "[U]npublished opinions are merely persuasive authority and not binding precedent." *English v. Quinn*, 76 Va. App. 80, 88 n.9 (2022). While *Spaulding* "will not be received as binding authority," consideration of it "is permitted as informative." Rule 5:1(f).

only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal." *Spaulding*, slip op. at 2 n.1, 2016 WL 489803, at *1 n.1. In concluding that the Commonwealth had failed to rebut the presumption of unreasonableness of a warrantless search, the Court there stated:

> In the present case, the Commonwealth failed to provide any facts to support a constitutional basis for the warrantless search of appellant's pants' pockets. The parties agreed to resolve the case on the merits, on a stipulated record. This stipulated record is absolutely devoid of facts presenting any exception to the warrant requirement applicable to Officer Stephens's search of appellant's pants' pockets. . . . Simply stated, the Commonwealth cannot overcome the presumption of unreasonableness of a warrantless search based on the record before us.

*Spaulding*, slip op. at 4, 2016 WL 489803, at *2. *Spaulding* was therefore cabined to its distinct facts, or lack thereof, in the record of that case. Nevertheless, we agree with Meredith that *Spaulding* stands for the proposition that an individual retains a privacy interest in the pockets of his clothing, notwithstanding that the clothing may have been removed by medical personnel during the administration of emergency medical care. *Cf. United States v. Davis*, 690 F.3d 226, 242-46 (4th Cir. 2012) (holding that the victim of a crime who was not arrested as a suspect "retains a privacy interest in his or her DNA material" found on clothing removed from him or her during the administration of emergency medical care and that "even if [the clothing] is lawfully in police custody[,] . . . the extraction of [the] DNA sample from [the] clothing and the creation of [a] DNA profile constituted a search for Fourth Amendment purposes," and therefore implicates the defendant's Fourth Amendment rights).

The Commonwealth argues that *Craft* should control our analysis, over *Spaulding*, because the holdings of the two cases are inherently irreconcilable and *Craft* is a published Supreme Court case. We disagree, as we do not read the holdings in *Spaulding* and *Craft* as inconsistent. In *Craft*, the defendant attempted to rob the owner of a convenience store but was shot twice by the owner

during the attempted robbery.  221 Va. at 260.  The owner described his assailant as wearing an "old

flowered shirt."  *Id.*  The defendant voluntarily admitted himself to the hospital to receive medical

treatment for his gunshot wounds.  *Id.* at 260-62.  During the administration of medical care,

medical personnel cut away the defendant's clothing—a distinct floral-patterned shirt containing

"two bullet holes"—and also removed a bullet from the defendant's torso.  *Id.*  The surgeon who

operated on the defendant thereafter asked the investigating officer whether they wanted to keep the

clothes and bullet as potential evidence of a crime.  The officer responded in the affirmative.

During the subsequent criminal proceeding against the defendant, the Commonwealth sought to

introduce the bullet and his clothing in order to connect the defendant to the attempted robbery and

shooting earlier in the night, and the defendant sought to suppress the bullet and his clothing on

Fourth Amendment grounds.  *Id.*  The trial court denied the defendant's motion.  *Id.*

In affirming the trial court's decision, the Supreme Court held that "[a] person admitting

himself to an emergency room has little expectation of privacy."  *Id.* at 262.  Further, "[w]hen [the

defendant] voluntarily presented himself in the emergency room of the hospital he impliedly

consented to be given necessary medical attention."  *Id.*

> [T]he removal of the defendant's clothing by hospital personnel was
> incident to his examination[,] . . . [n]o search by the officers was
> [therefore] required or effected[,] . . . [t]he articles lawfully came into
> the possession of [medical personnel,] and . . . there was no reason
> why they should not have been delivered to and received by [law
> enforcement].

*Id.* at 263.  The Court went on to cite to *Commonwealth v. Storella*, 375 N.E.2d 348 (Mass. App. Ct.

1978), for the proposition that "the doctor who removed the bullet and turned it over to the police

was not acting as an agent of the police but merely as a private citizen cooperating with the police

by turning evidence of crime over to them," that "[i]t has long been settled that the Fourth

Amendment to the United States Constitution applies only to searches and seizures taken by or at

the direction of the State," and that "evidence obtained illegally by private parties and turned over to

the police is not obtained in violation of the Fourth Amendment." *Craft*, 221 Va. at 263 (quoting *Storella*, 375 N.E.2d at 350).

The distinction between *Craft* and *Spaulding* is therefore apparent: in *Craft*, the clothing *itself* was used as evidence to connect the defendant to the attempted robbery earlier that night; but in *Spaulding*, the clothing was not the item that the defendant sought to suppress, but rather the contraband discovered *inside* the clothing. Therefore, the appropriate question in *Craft* was whether the clothing itself was lawfully obtained by the police, whereas the appropriate question in *Spaulding* (and in the instant case) is whether the *contraband discovered inside the clothing* was obtained lawfully. The clothing in *Craft* was not seized by a state actor, but a private citizen. Therefore, no seizure actually occurred, and the police lawfully came into possession of the clothing. But in *Spaulding*, though the police officer lawfully possessed the clothing for similar reasons as in *Craft*, the officer's *subsequent search* of the pockets of the victim's clothing was an unreasonable search under the Fourth Amendment.

Just as in *Craft*, Meredith also consented to the removal of his clothing, and medical personnel gave his clothing to Detective Hyde. "The removal of [Meredith's] clothing by hospital personnel was incident to his examination and treatment." *Craft*, 221 Va. at 263. "No search by the officers was required or effected" because "the clothing . . . w[as] not hidden or concealed. The articles lawfully came into the possession of [the doctor] and, under the circumstances of this case, there was no reason why they should not have been delivered to and received by the officers." *Id.*

Meredith claims that "police intentionally asked for Mr. Meredith's clothes" and that "they were not volunteered to the officers like the clothes in *Craft*." That argument is belied by the record. Detective Hyde explicitly testified that he did not tell the nurse to "give [him the] clothes." Instead, the nurse gave the clothes to him unsolicited as he was "just leaving." Although Meredith cites to certain ambiguous or contradictory statements in the record implying that Detective Hyde

expressly asked for the clothes, we view the evidence on appeal "in the light most favorable to the Commonwealth." *Joyce*, 72 Va. App. at 13 (quoting *Carlson*, 69 Va. App. at 757). In addition, it is well-established that the trial court, not this Court on appeal, may accept or discard all or part of the testimony as it thinks proper, and resolve any inconsistencies in a witness's testimony. *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (citing *Shelton v. Mullins*, 207 Va. 17, 22 (1966)). As the trial court's conclusion that a nurse gave the clothes to Detective Hyde unsolicited is supported by the record, that finding is binding on appeal.

However, notwithstanding the fact that Detective Hyde lawfully came into possession of Meredith's clothing, Meredith still retained a privacy interest in the pockets of his clothing, per *Spaulding*. Meredith is correct that unlike himself, the defendant in *Craft* "never argued he had a privacy interest in his clothing." In *Craft*, the Supreme Court explicitly held that "[t]he removal of [the defendant's] clothing and the removal of the bullet were necessary incidents" to the treatment, and "[a]s evidence of criminal agency the clothing and bullet were seizable objects, and under the facts of this case were appropriate objects to be voluntarily surrendered by the doctor who was in lawful control thereof." 221 Va. at 264 (citing *Ritter v. Commonwealth*, 210 Va. 732 (1970)). However, the character and significance of the clothing in *Craft* is different than that of Meredith's clothing, here. The clothing in *Craft* was itself probative evidence of a crime, and the Commonwealth relied on the clothing itself in connecting Craft to the attempted robbery. In contrast, here, the Commonwealth went a step further, by seeking to introduce the contraband *found inside Meredith's clothing*. Because the police did not obtain a warrant before searching the pockets of Meredith's clothing, the Commonwealth must show either that the warrantless search was reasonable and supported by an exception to the warrant requirement or that the exclusionary rule is inappropriate under the circumstances.

The Commonwealth argues that even if the search was unreasonable, the exclusionary rule should not apply. Citing *Davis v. United States*, 564 U.S. 229 (2011), the Commonwealth argues on brief that because "Detective Hyde did not engage in any purposeful misconduct or gross negligence . . . [and therefore] excluding the evidence recovered from the bloody clothing [would provide] no deterrent effect." The Commonwealth further cites *Herring v. United States*, 555 U.S. 135, 141 (2009), for the proposition that "the exclusionary rule is not an individual right and applies only where it 'result[s] in appreciable deterrence.'"

In *Herring*, a police officer, reasonably relying on a belief that "there [wa]s an outstanding arrest warrant" for the defendant based on "a negligent bookkeeping error by another police employee," arrested the defendant, searched him incident to that arrest, and ultimately discovered contraband on his person. *Id.* at 137. The defendant "moved to suppress the evidence on the ground that his initial arrest had been illegal because the warrant had been rescinded," but the trial court denied the motion. *Id.* at 138. The Supreme Court affirmed the trial court's ruling, stating that "[t]he extent to which the exclusionary rule is justified by . . . deterrence principles varies with the culpability of the law enforcement conduct." *Id.* at 143. The Court in *Herring* then went on to hold that:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level.

*Id.* at 144. In other words, because the mistake made by the police officer in *Herring* was the result of negligence not attributable to any systemic police practices but was instead an anomalous event, the exclusionary rule did not apply.

In *Davis*, the Court applied the good faith exception to the exclusionary rule, noting again that "[t]he rule's sole purpose . . . is to deter future Fourth Amendment violations" and that "the deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue." 564 U.S. at 236, 238 (alteration in original) (quoting *Herring*, 555 U.S. at 143). There, a police officer reasonably relied on binding judicial precedent from the Eleventh Circuit in effecting a search. *Id.* at 239. The *Davis* Court upheld the search, holding that:

> Although the search turned out to be unconstitutional under [future Supreme Court precedent], all agree that the officers' conduct was in strict compliance with then-binding Circuit law and was not culpable in any way. . . .
>
> Under our exclusionary-rule precedents, this acknowledged absence of police culpability dooms [the appellant's] claim. Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield "meaningfu[l]" deterrence, and culpable enough to be "worth the price paid by the justice system." The conduct of the officers here was neither of these things. The officers who conducted the search did not violate [the appellant's] Fourth Amendment rights deliberately, recklessly, or with gross negligence. Nor does this case involve any "recurring or systemic negligence" on the part of law enforcement. The police acted in strict compliance with binding precedent, and their behavior was not wrongful. Unless the exclusionary rule is to become a strict-liability regime, it can have no application in this case.

*Id.* at 239-40 (third alteration in original) (quoting *Herring*, 555 U.S. at 144).

In the present case, Detective Hyde testified that "when there is a (sic) bloody clothes," it is "standard procedure" to "take them to the forensic floor[,] . . . put them in a dry room[,] . . . [and] open them up [and] . . . go through them . . . [to ensure that there isn't] anything that shouldn't be in there." We are skeptical of the Commonwealth's reliance on *Herring* and *Davis*,[3] given the seemingly intentional and systemic nature of Detective Hyde's search of the pockets of Meredith's

---

[3] For the sake of clarity, we note that we refer here to the United States Supreme Court decision, *Davis v. United States*, 564 U.S. 229 (2011), not the Fourth Circuit case mentioned *supra*, *United States v. Davis*, 690 F.3d 226 (4th Cir. 2012).

clothing. However, we need not address those arguments, as we affirm the trial court's ruling below based on a different exception to the warrant requirement.[4]

The Fifth Circuit in *United States v. Gravitt*, 484 F.2d 375 (5th Cir. 1973), recognized that "when the police take custody of any sort of container—be it an automobile, suitcase, or any other thing in which property may be stored—it is reasonable to search the container to itemize the property to be held by the police." *Id.* at 378 (citing *United States v. Boyd*, 436 F.2d 1203 (1971)). This type of "inventory search" is permissible on the ground that "the underlying principle [is] that the [F]ourth [A]mendment proscribes only *unreasonable* searches." *Id.* (citing *United States v. Lipscomb*, 435 F.2d 795, 800 (5th Cir. 1970)). The rationale explicated by the Fifth Circuit in *Gravitt* was that "[a]n inventory is . . . necessary both to preserve the property of the [individual] . . . and to forestall the possibility that the [individual] may later claim that some item has not been returned to him." *Id.* (quoting *Lipscomb*, 435 F.2d at 800).

Virginia has recognized the propriety of inventory searches performed by police officers, sometimes dubbed the "'community caretaker' exception." *See Williams v. Commonwealth*, 42 Va. App. 723, 730 (2004). In *Williams*, this Court, applying the exception to the search of a suspect's vehicle, stated that:

> Under the community caretaker exception, the police may
> conduct a warrantless inventory search of a vehicle provided the
> following conditions are met: 1) the vehicle must be lawfully

---

[4] We affirm the trial court based on the "right result for the wrong reason" doctrine. "The 'right result for the wrong reason' doctrine has been a part of the law of Virginia for well over a century." *Spinner v. Commonwealth*, 297 Va. 384, 391 (2019) (citing *Schultz v. Schultz*, 51 Va. 358, 384 (1853)). "We have long said that '[w]e do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground.'" *Banks v. Commonwealth*, 280 Va. 612, 617 (2010) (alteration in original) (quoting *Eason v. Eason*, 204 Va. 347, 352 (1963)); *see also Perry v. Commonwealth*, 280 Va. 572, 582 (2010) ("An appellate court is not limited to the grounds offered by the trial court in support of its decision, and it is 'entitled to affirm the court's judgment on alternate grounds, *if such grounds are apparent from the record*.'" (quoting *MM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002))). This is in keeping with the principle of deciding cases on the best and narrowest grounds. *See Vandyke v. Commonwealth*, 71 Va. App. 723, 731 (2020).

impounded; 2) the impoundment and subsequent search must be conducted pursuant to standard police procedures; and 3) the impoundment and subsequent search must not be a pretextual surrogate for an improper investigatory motive.

*Id.* at 731.

In upholding the search conducted by police there, this Court reasoned that the same policy considerations outlined in *Gravitt* justified the search—those policy considerations being: "the protection of the owner's property while it remains in police custody," "the protection of police against claims or disputes concerning lost or stolen property," and the "protection of the public and the police from physical danger." *Id.* at 730 (citing *Reese v. Commonwealth*, 220 Va. 1035, 1039 (1980)). Here, the same policy considerations justify the search conducted by Detective Hyde, and his search complied with the three requirements set out in *Williams*: (1) the clothing was "lawfully [obtained]"; (2) the search was "conducted pursuant to standard police procedures"; and (3) the search was not "a pretextual surrogate for an improper investigatory motive." *Id.* at 731. Therefore, pursuant to the inventory exception, the search conducted by Detective Hyde was reasonable.

## CONCLUSION

The trial court properly denied Meredith's motion to suppress, as Meredith did not have a reasonable expectation of privacy in the emergency ward treatment room he was treated in, the police lawfully came into possession of his clothing, and the subsequent search of the pockets of his clothing was reasonable under the Fourth Amendment. The judgment of the trial court is affirmed.

*Affirmed.*